STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES O'LEARY, JULIUS BENEDICT, PASQUALE PIZZA, CARMINE TREDOLA, PETER SERRITELLI AND HAROLD MEEHAN, PLAINTIFFS IN ERROR.

Argued November 2, 1932—Decided January 23, 1933.

For the plaintiffs in error, *George E. Cutley* (*J. Victor D'Aloia,* of counsel).

For the state, *John Drewen,* prosecutor of the pleas, and *R. Lewis Kennedy,* assistant prosecutor.

The opinion of the court was delivered by

HEHER, J. Plaintiffs in error were tried upon an indictment charging murder, and convicted of murder in the second degree. Each was sentenced to imprisonment in the state prison for a term of thirty years. They sued out a writ of error, and the entire record of the proceedings had upon the trial was, under section 136 of the Criminal Procedure act (2 *Comp. Stat., p.* 1863), returned with the bill of exceptions. On allegation of diminution of the record a writ of *certiorari* was allowed, and the return to the writ shows that the jury, from the time they were sworn until the charge of the court, was not sequestered, but was allowed to disperse during recess, and that this course was taken by the presiding judge of his own volition, and without the disapproval of or objection by either the state or the accused. This action was assigned as error, and specified as a cause for reversal.

The first question presented is whether this action can, under the circumstances, be reviewed here. Can error be assigned thereon, in view of the absence of an exception thereto, and is this a ruling that may properly be specified as a cause for reversal under section 136 of the Criminal Procedure act? The latter question must be answered in the negative. The section in question provides that if it appears from the record brought up for review thereunder that the plaintiff in error suffered manifest wrong or injury, "either in the admission or rejection of testimony, whether objection was made thereto or not, or in the charge of the court, or in the denial of any matter by the court, which was a matter of discretion, whether a bill of exceptions was settled, signed and sealed thereto, or error assigned thereon, or not, the appellate court shall remedy such wrong or injury." Manifestly, the action complained of is not within this section, unless it was a denial of a matter that rested in the court's discretion, and for the reasons to be hereinafter stated this was not the case.

But, notwithstanding the absence of an exception and the

consequent inability of plaintiffs in error to bring the action complained of before this court by bill of exceptions, a review may be had here. It is within the exception to the rule that an appellate tribunal will not consider questions not properly raised in the court below. The error, if such it be, is apparent on the record, and involves a question of public policy. The rule in this state is that questions concerning jurisdiction or public policy are exceptions to the general rule that the reviewing tribunal will not examine questions not raised below. *State* v. *Forman,* 97 *N. J. L.* 168; *Mahnken* v. *Meltz, Ibid.* 159. The court itself may notice these questions even if not raised. *State* v. *Belkota,* 95 *Id.* 416.

Passing now to the substantive question, the court below, in making the order complained of, departed from an ancient practice that was embedded in the common law, and uniformly followed in this state from the earliest times. It forms "an institute of law which is wholly beyond the control of the court, and which belongs to the citizen as of right." *State* v. *Cucuel,* 31 *N. J. L.* 249. As was said by Chief Justice Beasley, in his well reasoned opinion in that case: "It is not a matter of unsubstantial form, but one of the means provided by the law, to reach the result of a verdict founded exclusively on the evidence delivered in open court in the presence of the parties. It is, therefore, as much a right of the defendant as is any other act which the law requires, by immemorial usage, to be performed at the trial. It is altogether impossible to admit the right of the court, at its pleasure, to waive the performance of this act. If the seclusion of the jury can be dispensed with before the charge of the court, why not dispense with it after such charge? And if the power to alter in one respect the admitted mode of ancient procedure is conceded to the court, what power to alter the forms of the trial can be denied?  *  *  *  It appears to be altogether illogical, admitting the great antiquity of the form of the separation of the jury from the mass of the community in capital cases, to maintain the right of the court to abolish such form, without at the same time admitting the right of the court to retain or set aside, at will, all the other essential

circumstances which go to make up the proceedings of a trial at law. But it is enough for us to know that this court has heretofore laid claim to no such power; that it has ever conformed its practice, with implicit obedience, to the ancient usages, leaving to the legislative department of the government the task to modify the law, so as to place it in harmony with the ever shifting conditions of human life."

We likewise adopt as fundamentally sound the concluding statement of the chief justice that, in a case in which the life of the accused is at stake, the sequestering of the jury during the continuance of the trial is a "requisition of absolute law, and is not, in any measure, a matter resting in the discretion of the court." A rule of procedure rooted in tradition and precedent, devised for the protection alike of society and the accused, should not be set aside unless the reasons which gave it vitality no longer obtain. This is not the case here. The considerations which gave it existence are as cogent and compelling to-day as when it first took form.

In *State* v. *Hornsby* (*La.*), 8 *Rob.* 554; 41 *Am. Dec.* 305, it was said that "this precaution is necessary to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge, and cannot be tortured into a disparagement of their integrity. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their ears to the expression of popular opinion." To which should be added that society is entitled to protection from improper influences that may be exerted upon jurors in cases of such great moment.

The state argues that "what this case presents to the court is not a capital verdict," and suggests that the failure of plaintiffs in error to interpose an objection is tantamount to an acquiescence in the action of the court. The first contention is without merit. The crime charged in the indictment continues to be a capital offense until the final disposition of the indictment. *State* v. *King,* 106 *N. J. L.* 338. Were this not so, the accused, in the event of a reversal, could not lawfully be convicted of murder in the first degree. The un-

soundness of this proposition is manifest. Furthermore, the legality of the court's action would be measured not by established rules of law, but by the result of the trial. This proposition is likewise untenable.

The second contention is also without merit. *Hopt* v. *Utah,* 110 *U. S.* 574 (at *p.* 579); 4 *Sup. Ct. Rep.* 202; 28 *L. Ed.* 262; *State* v. *Hornsby, supra.* In Hopt *v.* Utah, Mr. Justice Harlan, dealing with a question analogous in principle, said: "We are of the opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirement as to his personal presence at the trial. The argument to the contrary necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. But this is a mistaken view as well of the relations which the accused holds to the public as of the end of human punishment. The natural life, says Blackstone, 'cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow creatures, merely upon their own authority.' 1 *Bl. Com.* 133. The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods."

The judgment brought up for review will therefore be reversed, to the end that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, KAYS, WELLS, KERNEY, JJ. 10.