STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. BILLY GREEN, DEFENDANT-APPELLANT.

Argued October 25, 1965—Decided December 23, 1965.

Mr. *Donald G. Marshall* argued the cause for appellant.

Mr. *Philip R. Glucksman,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Philip R. Glucksman* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The appellant, Billy Green, and five codefendants, Clayton Anderson, Carlton Blanchard, Percy Edmonds, Clyde Hightower and Jesse Williams, were jointly tried in the Essex County Court for first degree murder. The jury acquitted three, Edmonds, Hightower and Williams. The jury found Anderson guilty without a recommendation of life imprisonment, and he was sentenced to death. Green and

Blanchard were found guilty with a recommendation of life imprisonment. In a prior appeal arising from the same trial, Anderson's conviction was reversed on the ground that the introduction into evidence of the out-of-court statements of his codefendants was prejudicial. *State v. Blanchard*, 44 *N. J.* 195 (1965). Green, the sole appellant here, appeals to this court as of right pursuant to *R. R.* 1:2–1(c).

On the night of May 9, 1963, the body of James Dodd was found in the hallway at 405 Hunterdon Street, Newark. The autopsy showed that he had been stabbed to death. All six defendants were indicted for this crime on July 23, 1963, but Green was hot arrested until March 5, 1964. The State's theory at the trial was that Dodd had been killed while all six defendants were acting in concert to rob him.

## I.

Shortly after each defendant was arrested he signed a detailed typewritten statement, in question and answer form, describing the events leading up to and after the stabbing of Dodd. At the trial the State introduced these statements into evidence, and police officers also testified to oral admissions which several of the defendants had made at the time of their arrests and interrogations. When the State offered into evidence the statements of Green's codefendants, his counsel objected to their admission because the statements implicated his client.[1] The trial court overruled the objection. It held that the statement of each declarant was admissible against him alone and that a proper instruction to the jury to that effect was all that was required. Each statement was subsequently read to the jury by the prosecutor and the trial

---

[1] At the time the State offered the statements of Green's codefendants, his counsel, in addition to objecting to their admission, sought to have the references to Green deleted. The prosecutor objected, arguing that the deletions would destroy the sense of the statements as to the declarants. The trial court agreed. We have examined these statements and agree that deletions would have been impractical. See *State v. Blanchard*, 44 *N. J.* 195, 206, at footnote 5 (1965).

court cautioned the jury that the statement was evidentiary only against the defendant who made the statement. In its charge the trial court again cautioned the jury as to the restricted use of each defendant's statement. The written statements were submitted to the jury as exhibits for their consideration during deliberation.

 It is beyond doubt that the out-of-court statements of the other defendants were inadmissible against Green. *State v. Young,* 46 *N. J.* 152 (1965); *State v. Blanchard, supra.* In *Blanchard,* Anderson's conviction was reversed because we found the statements of his codefendants so honeycombed with references to his participation in the crime that it would have been psychologically impossible for the jury to follow the judge's instructions and ignore these statements when determining Anderson's guilt and punishment. Green claims, and we agree, that the reasoning which compelled our ruling on that appeal applies equally here.

Since all six defendants admitted being together in Anderson's automobile on the night of the crime, the acquittal of Edmonds, Hightower and Williams clearly establishes that the jury did not consider that fact to be sufficient evidence of guilt. Green, like the three acquitted defendants, claims that he did not knowingly participate in the crime, and he maintained this position both in his written statement to the police and in his testimony at the trial. However, the statements of Green's five codefendants all agree that, far from being an innocent bystander, Green knowingly joined Anderson in the robbery and killing of Dodd.

Blanchard's statement contained the following description of the crime:

"While we [the six defendants] was riding around we drove up West Kinney St. to 16th. Ave. and went up 16th. Ave. and while we was riding we saw a man wearing a white apron dragging a man [Dodd] across the street on 16th. Ave. and put the man on park bench, and the man that put him on the bench walked back across the street and went into a tavern or a restaurant. Calvin [Anderson] stopped the car on 16th. Ave. right by the gas station on the corner of Hunterdon St. and 16th. Ave. and Calvin said 'let's see if he got any

money' and Calvin and his brother Billy [Green][2] got out of the car and walked over to the park bench and they walked back with the fellow that had been sitting on the bench, they was holding him up by the arms and they put him in the back seat of the car. As soon as they put the guy in the car Calvin and his brother [Green] started to go through his pockets.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

After Calvin opened the door and was stabbing at the guy, Billy helped to pull the guy out of the car and started kicking at him."

The statements of Hightower, Williams and Edmonds were similar to Blanchard's in describing Green's role in the robbery and killing.

And Anderson's statement also made several damaging references to Green:

"At this time Clyde [Hightower] was right by the guy and was going to frisk him down but I pushed him away and me and Billy Green each grabbed a arm and put him in the back seat of the car.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

&ast; &ast; &ast; so Billy jumped out the car so then I got out and ran around when I got there Billy was standing up and the guy was half way down, Billy had a knife in his hand and I snatched it away from him.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Q. Did anyone else stab or cut Joseph Dodd?

A. I don't know but I saw Billy Green swinging at Dodd with a knife before I took it away from him.

Q. Did you see anyone kick, or punch Joseph Dodd.

A. I seen Billy kick him &ast; &ast; &ast;."

The statements of Green's codefendants were not only read to the jury by the prosecutor but were also quoted extensively during his summation and were given to the jury as exhibits. Moreover, several police officers testified to oral statements given by Anderson, Hightower, Edmonds and Williams which inculpated Green. We are convinced that the admission of the statements of Green's codefendants created a powerful potentiality for prejudice against which the limiting instructions of the trial judge could offer no protection. The number of statements, the frequency with which they referred to

---

[2] Blanchard's statement erroneously refers to Green as Anderson's brother.

Green, and their unanimity in labeling him a principal actor in the crime, lead us to conclude that it would have been a mental effort beyond the power of any jury to ignore these statements when determining Green's innocence or guilt. See *State v. Blanchard, supra,* 44 *N. J.*, at *p.* 203.

The State contends, citing *State v. Ordog,* 45 *N. J.* 347 (1965), that Green was not prejudiced because his own written statement was substantially similar to those of his codefendants. In *Ordog,* the two defendants both confessed to a robbery-murder, and both confessions contained identical information. There, because of the similarity of the confessions, we held that the jury was able to follow the judge's limiting instructions and that no prejudice could have resulted. *Id.,* at *pp.* 355–357. In the present case, Green's written statement to the police conflicts with the statements of his five codefendants. While he did admit helping Anderson bring Dodd to the car, he did not admit knowing of Anderson's criminal intentions. However, the statements of his codefendants, if believed, would show that Green was a willing accomplice and an active participant who knew full well that Dodd was an intended robbery victim. And Green, contrary to the statements of his codefendants, denied that he ever stabbed, hit or kicked Dodd.

The State also argues that even if the jury was unable to follow the trial court's limiting instructions, Green was not prejudiced because there was substantial independent evidence supporting his conviction. We cannot accept this contention. Although there may have been sufficient other evidence of guilt, the admission of the codefendants' statements cannot be considered harmless, since no one can tell what part they played in the jury's decision to disbelieve Green's claim of innocence. See *State v. Tassiello,* 39 *N. J.* 282, 296 (1963). Our courts have always held that where prejudicial evidence is placed before the jury there must be a reversal notwithstanding the existence of other competent evidence. *State v. Petrolia,* 21 *N. J.* 453, 460 (1956); *State v. Tamburello.* 69 *N. J. Super.* 166, 173 (*App. Div.* 1961); *State v. Samurine,*

47 *N. J. Super.* 172, 181 (*App. Div.* 1957), reversed on other grounds 27 *N. J.* 322 (1958).

In the circumstances of this case, the admission into evidence of the statements of Green's codefendants, notwithstanding the trial court's cautionary instructions, was prejudicial and constituted reversible error. It should be noted that the problems concerning the proper use of these statements were not presented to the court until after the trial had commenced. In the recently decided case of *State v. Young, supra,* we set forth a procedure which would resolve these problems prior to the start of a trial. If in this pretrial procedure the court finds that effective deletions are impractical (as was true here), it should order separate trials. Dealing with the statements before trial will avoid subsequent prejudice both to the State and the defendants.

## II.

Soon after Green was arrested he gave a written statement to the police and made an oral statement to the police surgeon, both of which were admitted into evidence at his trial. Green contends that these statements were given without the advice of counsel and that their admission violated his rights under the Sixth and Fourteenth Amendments of the Constitution as interpreted by the United States Supreme Court in *Escobedo v. State of Illinois,* 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed. 2d* 977 (1964), and *Massiah v. United States,* 377 *U. S.* 201, 84 *S. Ct.* 1199, 12 *L. Ed. 2d* 246 (1964).

Green was indicted on July 23, 1963. However, it was not until March 5, 1964, that he was arrested by an agent of the Federal Bureau of Investigation. While in the agent's custody Green was advised that he could remain silent and that he had a right to an attorney. He did not make any statement to the agent and on the same day he was turned over to the Newark Police. He was taken to police headquarters where he was immediately interrogated, although the police at no time informed him of his right to legal assistance. Shortly

thereafter Green signed a typewritten statement in which he admitted being present in Anderson's car on the night of the crime and helping Anderson drag Dodd from the park bench to the car.[3] On the day after Green gave his written statement he was examined by a police surgeon who testified at the trial that "* * * I asked Mr. Green who he had injured or killed and he said, 'Six of us together, we robbed and stabbed a man.'"

In *Escobedo v. State of Illinois, supra,* the defendant had already retained counsel and had made repeated requests to see him, and his confession was made only after his requests had been denied. The United States Supreme Court held that in those circumstances the defendant had been denied his right to counsel as guaranteed by the Sixth Amendment. In the present case it is undisputed that Green never requested an opportunity to confer with an attorney, and we have consistently held that in the absence of a specific request for counsel *Escobedo* is inapplicable. See *State v. Coleman,* 46 *N. J.* 16, *pp.* 33, 34 (1965) and cases cited therein.

In *Massiah v. United States, supra,* the defendant was indicted for violating federal narcotic laws. He retained a lawyer, pleaded not guilty and was released on bail. While free, incriminating statements of the defendant were obtained when federal agents "bugged" the car of a confederate of the defendant who was cooperating with them. Massiah had no knowledge that his conversations were being recorded. In reversing his conviction, the Court held that his incriminating statements should not have been used against him at his trial.

We first had occasion to consider the scope of *Massiah* in *State v. Blanchard, supra,* in which Green's codefendant, Anderson, argued that his confession had been wrongfully admitted into evidence because it had been elicited by the police after he was indicted and while he was without the

---

[3] Although the statement was intended by Green to be exculpatory the admissions contained in it were damaging to him.

assistance of counsel. Since Anderson's statement had been made voluntarily in the known presence of police officers (as was also true with Green), we held that *Massiah* was inapplicable. We accepted this distinction which had previously been made by the Ohio Supreme Court in *State v. McLeod*, 1 *Ohio St. 2d* 60, 203 *N. E. 2d* 349 (1964). In that case the defendant voluntarily confessed to the police after his indictment. At the time he confessed he was not represented by counsel nor had he requested counsel. In holding the defendant's confession admissible, the Ohio court distinguished *Massiah* on the ground the confession was made "willingly in the known presence of public officers." *State v. McLeod, supra*, 1 *Ohio St. 2d*, at *p.* 61, 203 *N. E. 2d*, at *p.* 351.

Subsequent to our decision in *Blanchard*, the defendant in *McLeod* appealed to the United States Supreme Court, where his conviction was reversed *sub nom. McLeod v. Ohio*, 381 *U. S.* 356, 85 *S. Ct.* 1556, 14 *L. Ed. 2d* 682 (1965). In a succinct opinion the court stated:. "The judgment is reversed. Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246." In light of *McLeod* we must now interpret *Massiah* as holding that after a defendant is indicted any statement elicited by the police in the absence of counsel is inadmissible even where the statement is voluntarily given.

■ The State emphasizes that Green was informed of his right to counsel while he was in the custody of the Federal Bureau of Investigation. However, the Newark Police officials who actually interrogated Green and elicited his statements did not advise him of his right to obtain legal assistance, and neither the Federal Bureau of Investigation nor the Newark Police advised him that, if he were indigent, counsel would be assigned to him. It is clear that under these circumstances Green cannot be deemed to have waived his constitutional right to the assistance of an attorney. See *Doughty v. Maxwell*, 376 *U. S.* 202, 84 *S. Ct.* 702, 11 *L. Ed. 2d* 650 (1964); *Carnley v. Cochran*, 369 *U. S.* 506, 82 *S. Ct.* 884, 8 *L. Ed. 2d* 70 (1962); *Von Moltke v. Gillies*, 332 *U. S.* 708, 68 *S. Ct.*

316, 92 *L. Ed.* 309 (1947); *In re Garofone,* 42 *N. J.* 244 (1964); Note, 19 *Rutgers L. Rev.* 111, 127–134 (1964).

█ Green's written statement to the police and his later oral admission to the police surgeon were made after his indictment and when he was without the assistance of counsel. Their admission into evidence was prejudicial and constituted reversible error.

### III.

We have considered the other points raised by the defendant and find them to be without merit.

The judgment of conviction is reversed and the cause remanded for a new trial.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.