98 N.J. Super. 22 (1967)
235 A.2d 913
STATE OF NEW JERSEY, PLAINTIFF,
v.
CARLTON BLANCHARD, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 16, 1967.
*24 Mr. Lawrence S. Schwartz, Assistant Prosecutor of Essex County argued the cause for plaintiff (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Charles B. Helfgott for defendant.
*25 LARNER, J.S.C.
This matter arises upon a petition for post-conviction relief filed by Carlton Blanchard pursuant to R.R. 3:10A-1 et seq. In his petition defendant asserted three grounds for relief: (1) he was denied a fair trial; (2) the sentence was excessive, and (3) the conviction was void because of the failure of the court to advise him of his right to appeal.
A hearing was held before this court at which time oral arguments were heard, defendant's testimony taken and written briefs submitted by both parties.
At the hearing defendant understandably abandoned and withdrew grounds No. 2 and 3 since there was no basis in law for these contentions. Furthermore, upon exploration by the court of defendant, individually, and his counsel, it became clear that the sole contention underlying defendant's application for post-conviction relief was the absence of a fair trial in the due process sense. This generalized ground was articulated in specific terms as trial error involving the admission of statements of codefendants at a joint trial which contained references to defendant. Defendant was convicted on April 22, 1964 of murder in the first degree with a recommendation of life imprisonment. Accordingly, he was on the same date sentenced to the New Jersey State Prison for a term of life and is currently confined there. His petition for post-conviction relief was filed on March 30, 1967.
Blanchard was tried with five other defendants in a joint trial involving a felony murder. Billy Green was also convicted and sentenced to life imprisonment. Clayton Anderson was convicted without a recommendation and sentenced to death. The other three defendants, Edmonds, Hightower and Williams, were acquitted.
At the post-conviction hearing defendant testified that some time before the period for appeal from his conviction had expired he conferred with his court-appointed attorney regarding a possible appeal. A considered decision was made at that time not to appeal, allegedly because of the attorney's advice that in the event of a reversal and new trial, defendant *26 would be exposed to a possible death penalty. This took place before the recent pronouncement of the Supreme Court in State v. Wolf, 46 N.J. 301 (1966), to the effect that a murder conviction with a recommendation of life imprisonment bars the prosecution from seeking a death penalty upon a retrial in the event of a reversal. Apparently, the attorney's advice was in accord with current law at the time. See State v. O'Leary, 110 N.J.L. 36 (E. & A. 1933), and State v. King, 106 N.J.L. 338 (E. & A. 1930); Stroud v. United States, 251 U.S. 15, 18; 40 S.Ct. 50, 64 L.Ed. 103 (1919); Fay v. Noia, 372 U.S. 391, 396, 440; 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In any event, it is manifest that defendant, after consultation with counsel, deliberately concluded not to take an appeal and so informed his counsel in writing at the time.
On the other hand, his two codefendants, Anderson and Green, both appealed to the Supreme Court and succeeded in reversing the convictions and securing new trials. State v. Blanchard, 44 N.J. 195 (1965), and State v. Green, 46 N.J. 192 (1965). Both reversals stemmed from a finding by the Supreme Court of prejudicial trial error by virtue of the admission of the statements of five codefendants at the joint trial which contained references to each of the appealing defendants. Although the trial judge had repeatedly instructed the jury that each statement was admissible only against the individual defendant who had made it and could not be used against any of the codefendants, the Supreme Court found in each case that the statements of the codefendants were "so honeycombed with references to his participation in the crime that it would have been psychologically impossible for the jury to follow the judge's instructions and ignore these statements." State v. Green, supra, at p. 195. Hence, it was held that in the circumstances of this trial, with the multiple defendants and multiple statements involving cross-references to the other participants, the cautionary instructions of the trial judge, though clear and explicit and though repeated on many appropriate occasions, was ineffectual from a psychological *27 standpoint and therefore resulted in sufficient prejudice to warrant reversal. A new pretrial procedure was suggested for cases involving statements of codefendants in order to avoid similar trial pitfalls in the future. State v. Green, 46 N.J. 192, 198 (1965); State v. Young, 46 N.J. 152, 158 (1965).
It is noteworthy that the reversals in Blanchard and Green marked a new approach in the law of the State of New Jersey, for it was accepted prior to that time that such statements by codefendants were admissible in a joint trial in the discretion of the trial judge, provided that their objectionable hearsay effect was ameliorated by prompt and emphatic cautionary instructions to the jury that each statement was admissible only against the declarant. Cf. State v. Murray, 33 N.J. 393, 397 (1960); State v. Tassiello, 39 N.J. 282, 296 (1963); State v. Rios, 17 N.J. 572, 585 (1955); State v. Rosenberg, 37 N.J. Super. 197, 203 (App. Div. 1955); State v. Johnson, 31 N.J. 489, 506 (1960); Delli Paoli v. United States, 352 U.S. 232, 243, 77 S.Ct. 294, 300, 1 L.Ed.2d 278 (1957).
A review of the trial record in the case at bar reveals that there were introduced into evidence, over the appropriate objection of defendant Blanchard's counsel, not only the statement of Blanchard but also the statements of Anderson, Green, Hightower, Edmonds and Williams. Throughout the trial, however, the trial judge repeatedly cautioned the jurors as to the limiting evidential effect of each statement and its applicability to Blanchard, and he again instructed them on the subject in his final charge.
Nevertheless, it is evident from a reading of the questioned exhibits that all the statements of the codefendants made reference to defendant Blanchard, with some inculpating him more than others in the joint crime which involved a robbery murder. As a consequence, he had the same legal basis for potential reversal of his conviction as defendants Anderson and Green. Despite his decision not to exercise his right of appeal within the time limited by our rules, defendant now seeks a new trial on the ground that the *28 prejudicial error found by the Supreme Court in the companion cases of his codefendants resulted in such a denial of fundamental fairness in the constitutional sense that he is entitled to relief on this post-conviction application.
Post-conviction relief is not a substitute for the appellate process. R.R. 3:10A-3 provides in part:
"Such remedy is not a substitute for appeal from conviction or for motion incident to the proceedings in the trial court."
The principle of this rule was reiterated by the Supreme Court in State v. Smith, 43 N.J. 67 (1964), certiorari denied 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965):
"[A] post-conviction proceeding may not be used as a substitute for an appeal from the judgment of conviction. All alleged errors inhering in a trial must be asserted in a direct review from the conviction, the sole exception being an error which denies fundamental fairness in a constitutional sense and hence denies due process of law." (at p. 74)
The scope of post-conviction relief, therefore, is limited only to the rectification of error which has constitutional dimensions. Trial error which does not violate the basic guarantee of fundamental fairness in the trial of the accused cannot be considered in a post-conviction relief proceeding even if the challenged error is sufficiently prejudicial to warrant reversal in a direct appeal. State v. Smith, 43 N.J. 67 (1964), certiorari denied 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965); State v. Johnson, 43 N.J. 572 (1965), affirmed 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).
As was observed in State v. Brown, 41 N.J. 590 (1964), certiorari denied 377 U.S. 981, 84 S.Ct. 1888, 12 L.Ed.2d 749 (1964):
"The due process clause cannot be invoked merely because the `fairness' of some proposition of law is in question. The Fourteenth Amendment was not intended to subsume the vast body of local law and to articulate answers of constitutional strength and durability with respect to it." (at p. 590)
*29 The question before this court, therefore, is whether the admission into evidence of the statements of the codefendants, accompanied by the trial judge's cautionary instructions, constituted such a substantive error as to violate the requirement of fundamental fairness under the due process guarantee of the Fourteenth Amendment.
The mere fact that the procedural method of cautionary instructions utilized by the trial judge was held to be psychologically impractical in Blanchard and Green as a guarantee against the prejudicial effect of the other statements upon the minds of jurors, meant only that the Supreme Court of New Jersey found that its suggested procedure was preferable. Upon analysis, the issue was only procedural in character, did not go to the heart of the fact-finding process, and did not involve rights of constitutional dimension.
In Stein v. People of State of New York, 346 U.S. 156, 194, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), the Supreme Court of the United States reviewed the conviction by the New York courts of defendant Wissner. His appeal was also based upon error in the admission of confessions of codefendants which made references to him. It was his contention that these statements constituted hearsay as to him and that he was deprived of the right of cross-examination which should have been available to him because of the constitutional right of confrontation under the Sixth Amendment, as applied to states through the due process clause of the Fourteenth Amendment.
Among other grounds for affirmance, Justice Jackson, speaking for the majority, pointed out:
"The hearsay-evidence rule, with all its subtleties, anomalies and ramifications, will not be read into the Fourteenth Amendment. Cf. West v. State of Louisiana, supra. 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965.
Perhaps the methods adopted by the New York courts to protect Wissner against any disadvantage from the State's use of the Cooper and Stein confessions were not the most effective conceivable. But `Its procedure does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser *30 or to give a surer promise of protection to the prisoner at the bar.' Snyder v. Commonwealth of Massachusetts, supra, 291 U.S. [97], at page 105, 54 S.Ct., at page 332, [78 L.Ed. 674]" (73 S.Ct., at p. 1098)
See also Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); United States ex rel. Johnson v. Yeager, 327 F.2d 311, 318 (3 Cir. 1964).
Collateral attack upon judgments of conviction is warranted within the broad concept of fundamental fairness when grave doubts are cast upon the reliability of the determination of defendant's guilt, or, as expressed by Justice Cardozo, when relief is dictated by the "deepest sentiments of justice." Cardozo, The Nature of the Judicial Process, 148-149 (1921). Hence, post-conviction relief has been granted in cases involving known perjured testimony, Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 S.Ct. 791 (1935); suppression of evidence, People v. Carter, 48 Cal.2d 737, 747, 312 P.2d 665, 671 (Sup. Ct. 1957); admission of an involuntary confession, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); denial of the right to counsel, Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, (1963); and the failure to provide an indigent defendant with a trial transcript necessary to perfect an appeal, Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).
Chief Justice Traynor summarized the underlying philosophy in an article entitled "Mapp v. Ohio at Large in the Fifty States." 1962 Duke L.J. 319, 340-341 (1962), as follows:
"The most telling reason for collateral attack on judgments of conviction is that it operates to eliminate the risk of convicting the innocent. Such a risk attends any conviction ensuing from the witting use of perjured testimony, the suppression of evidence, an involuntary *31 confession, the denial of an opportunity to present a defense, and the denial of the right to counsel. A comparable risk arises upon a failure to provide an indigent defendant with a trial transcript necessary to perfect his appeal.
The most telling distinction of a defendant convicted on evidence resulting from an unreasonable search or seizure is that he is clearly guilty. It is not the purpose of the exclusionary rule to protect the guilty. Its purpose of deterring lawless law enforcement will be amply served in any state from now on by affording defendants an orderly procedure for challenging the admissibility of the evidence at or before trial and on appeal.
Deterrence would be served but little more and at exorbitant cost by affording the weapon of collateral attack to those defendants who were convicted before the adoption of any exclusionary rule and hence had no way of challenging the admissibility of the evidence. To begin with, their cases are history, and they should not now be given the power to rewrite it. To place at the disposition of the guilty an extraordinary remedy designed to insure the protection of the innocent would be to invite needless disruption in the administration of justice. There is a world of difference between a timely objection to evidence on the basis of the exclusionary rule and the uprooting of final judgments."
The problem has arisen in the main in recent years because of the many changes in judge-made law in the field of criminal jurisprudence and the determination of whether those changes shall be applied retroactively to those convicted under rules and law in existence during their trials. Even in cases involving issues of constitutional dimension, there can be no automatic application of the principle of retroactivity which would warrant a new trial for every convicted defendant because the current view of law demonstrates that he had been deprived of a constitutional guarantee. The Constitution neither prohibits nor requires retrospective effect of new judge-made law. Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). As observed by Justice Proctor in State v. Johnson, 43 N.J. 572, 584 (1965), aff'd., 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966):
"Society reasonably expects that when a man is convicted of a crime by a method not considered unfair according to the rules of law then in effect, that conviction will stand. Therefore, unless some countervailing considerations of `the deepest sentiments of justice' *32 compel otherwise, a new rule of criminal law should not be applied retroactively. * * *

* * * * * * * *
Where the reliability of the guilt-determining process is seriously impugned, there is good reason for applying the new rule to a case already decided. It would offend our sense of justice to continue to incarcerate a convicted man where subsequent considerations cast grave doubts upon the reliability of the determination of his guilt. But where the conviction was obtained as a result of a procedure not considered fundamentally unfair at that time, and subsequent judicial decisions cast no substantial doubts upon the reliability of the determination already made, no compelling reason exists for disturbing a decision no longer subject to direct appeal."
Thus, although Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), prohibits the admission in state courts of evidence obtained through an unreasonable search or seizure because of the invasion of a constitutional guarantee, the rule has not been applied retroactively to judgments of conviction pre-dating the Mapp decision. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); State v. Smith, 43 N.J. 67 (1964), certiorari denied 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965). Similar rulings have been made on the applicability of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) holding that comment by a prosecutor or trial judge on the failure of a defendant to testify in a state trial violates the constitutional privilege against self-incrimination, Tehan v. United States ex rel. Shatt, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); State v. Hall, 89 N.J. Super. 361, 364 (App. Div. 1965); and on the applicability of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), involving the right to counsel during the interrogation process, State v. Johnson, 43 N.J. 572 (1965), affirmed 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and on the ruling of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), involving necessary warnings to defendants prior to police interrogation, State v. Johnson, supra.
*33 Thus, in evaluating whether the new interpretation of constitutional law applicable to criminal defendants shall serve retrospectively to permit collateral attack upon a prior judgment of conviction, the court must determine whether the asserted trial error "challenges the reliability of the judicial determination of guilt."
Defendant nevertheless urges that "evenhanded" justice requires a new trial as to him because of the unusual circumstance that the error found by the Supreme Court resulted from an appeal in the very case which produced his conviction. He contends that his failure to take a direct appeal should not place him in a less advantageous position than his codefendants who were granted a new trial, and that the change in law espoused by the Supreme Court in State v. Blanchard and State v. Green, supra, should be applied to him in this post-conviction proceeding.
At first blush, from the viewpoint of abstract justice, such an argument evokes a reaction favorable to defendant's position. However, upon mature consideration it is clear that the basic principle of finality of judgments as implemented by the limitations imposed by the courts on post-conviction proceedings and retroactive application of new law is just as valid and applicable whether the new rule or law is articulated in another case or on an appeal in the same case. Defendant's conscious and deliberate failure to appeal placed him in the same position as a defendant in an unrelated case and his present application must be evaluated by the same principles.
Research on this specific problem has disclosed the Appellate Division opinion in the case of State v. Croland, 63 N.J. Super. 143 (App. Div. 1960), rev'd 35 N.J. 163 (1961), which stands out as a unique case under distinguishable circumstances. The Appellate Division held that despite the deliberate failure of a defendant to appeal his conviction, fundamental justice required consideration by the County Court of an application to set aside the conviction because an appellate court had reversed the conviction of a codefendant upon a thesis which included a finding of innocence on *34 the part of the nonappealing defendant. See State v. Croland, 54 N.J. Super. 594 (App. Div. 1959) affirmed 31 N.J. 380 (1960).
It is manifest that where it is apparent that a defendant has been wrongly convicted of the commission of a crime of which he is innocent, basic concepts of fairness demand that the court undo the injustice. Under such circumstances, principles of law involving finality of judgments and rules of court involving time limitations for appeal must be shunted aside in favor of the broader concept of fundamental justice under our law.
However, the position of Croland under the reasoning of the Appellate Division is a far cry from the position of Blanchard in this case. (Cf. Supreme Court view in 35 N.J. 163 at 166-167.) The Appellate Division held that Croland was entitled to relief despite rules of court and rules of law because of his innocence. Blanchard, on the other hand, is not entitled to relief because the error in his trial did not impugn his guilt, but rather the procedural impropriety of the admission of certain evidence.
Nor does the record of the Blanchard trial cast grave doubts upon the reliability of the determination of his guilt. State v. Johnson, supra; State v. Garvin, 44 N.J. 268, 279 (1965)). The State's prosecution against him was based not upon his active perpetration of the murder or robbery but on the theory that he aided and abetted in the commission of the offense and was therefore guilty as a principal. N.J.S. 2A:85-14.
In his own statement, which was properly admissible against him, he admitted that he had been riding in a car with the codefendants and that when the car stopped at the corner of Sixteenth Avenue and Hunterdon Street in Newark, he and his fellow passengers observed a drunken man being dragged across the street from a tavern and placed on a park bench. His codefendant Anderson said "Let's see if he got any money." Defendant, according to his own statement, remained in the back seat of the car while codefendants Anderson and Green pulled the victim *35 from the bench into the rear of the car. Defendant went on to relate how the victim was robbed of his wallet and some change while he was still in the rear of the car and while he, Blanchard, still remained in the back seat. He further stated that the victim was stabbed by Anderson while he was in the rear or was in the process of being dragged from the car to the street. He remained with the codefendants after the robbery and stabbing, riding around on various streets of Newark and ultimately going to a tavern with them. Sometime subsequent to these events he heard that the victim died, and explained that he did not notify the police because he was "scared to get involved."
In addition to the foregoing factual background contained in defendant Blanchard's own statement, another codefendant, Williams, testified that prior to the stabbing Anderson asked Blanchard for his knife, whereupon Blanchard took something out of his pocket and handed it to Anderson.
It is evident that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that Blanchard was guilty of aiding and abetting in the robbery and the murder, without resort to the statements of the codefendants. Regardless of the challenged statements, the determination of guilt by the jury was fully justified and the verdict was based upon a sufficiency of evidence reflecting participation of Blanchard as an aider and abettor.
In view of this finding from the trial record, the case does not present a picture of an innocent man who has been prejudiced because of his failure to appeal, nor a picture reflecting grave doubt about the reliability of the jury's finding of guilt. Consequently, there is totally absent the basic factor which would motivate a court to disregard the sanctity and finality of the judgment of conviction in order to grant the extraordinary relief involved in a post-conviction proceeding.
It therefore follows that the application for a new trial embodied in the petition for post-conviction relief must be denied. An order should be presented to conform with this conclusion.