116 N.J. Super. 106 (1971)
281 A.2d 106
STATE OF NEW JERSEY,
v.
MATTHEW J. HALE, JR., DEFENDANT-PETITIONER.
Superior Court of New Jersey, Law Division  Criminal.
Decided August 23, 1971.
*107 Mr. Dominick J. Ferrelli, Prosecutor for Burlington County, for State.
Mr. George H. Barbour for defendant-petitioner.
MARTINO, A.J.S.C.
Petitioner Matthew James Hale, Jr. was charged and tried for the murder of his wife on or about midnight, May 28, 1961. On June 29, 1962 a jury returned a verdict of guilty in the first degree with a recommendation of life imprisonment. Petitioner was thereupon committed to the New Jersey State Prison and has since been transferred to Leesburg Prison where he is now confined.
A direct appeal to the Supreme Court of New Jersey resulted in an affirmance of the conviction, State v. Hale, 45 N.J. 255 (1965). A petition for rehearing filed October 29, 1965 was denied on November 16, 1965. The Supreme Court of the United States denied certiorari on June 20, *108 1966. Hale v. New Jersey, 384 U.S. 884, 86 S.Ct. 1981, 16 L.Ed.2d 1001. There have been no post-conviction proceedings in this State other than the appeals relating to the conviction from which relief is sought under the instant petition.
An in forma pauperis application for a writ of habeas corpus was filed with the United States District Court for the District of New Jersey, and on June 5, 1969 a memorandum and order by Chief Judge Augelli, was entered dismissing the petition, without prejudice, for failure to exhaust available remedies on the issue of petitioner's competency to stand trial. The instant petition ensued.
Facts pertinent to the disposition of petitioner's application are as follows:
On or about March 7, 1966, approximately eight months after defendant's conviction had been affirmed, the United States Supreme Court decided Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. The court there held that the failure to hold a hearing on a defendant's competency to stand trial, where the evidence raises a "bona fide doubt" as to such competency, is a denial of due process of law. While petitioner could not have argued that he was entitled to a trial competency hearing under Pate on his direct appeal, it is evident that the decision was available to defendant well within the five-year period of limitation for seeking post-conviction relief pursuant to R. 3:22-12.
Since the New Jersey Supreme Court affirmance of his conviction and up to the filing of the present application, petitioner has not been represented by counsel.
The petition herein was filed beyond the five-year period of limitation provided for under R. 3:22-12. In his application petitioner asserts as his primary ground for relief that "despite compelling evidence that petitioner might not be competent to stand trial, the trial court did not order a statutory hearing to determine that fact," contrary to the due process clause of the 14th Amendment to the Federal Constitution.
*109 The substance of the psychiatric testimony at petitioner's trial was concerned with his mental condition as of May 28, 1961, the date of the homicide. Without the benefit of the complete transcript of the trial below, reliance is placed upon the New Jersey Supreme Court's account of the proofs adduced at that trial which were aimed at establishing Hale's alleged insanity at the time of the crime. Hale's background reveals that he had been in trouble at an early age as a result of breaking into a school and a church. He began drinking alcohol in his teens. Hale never finished high school, enlisting in the Marines following his third year. Although he served with some distinction in Korea, he was twice absent without leave when not on combat duty. Although he was able to hold a job on his return from the service, he continued his excessive drinking habit. He talked of ending his life, on one occasion slashed his wrist, while on another threatened to shoot himself. Besides threatening to do harm to himself, he threatened his brother Pressley, a paraplegic, and discussed robbing two business establishments.
On several occasions defendant received psychiatric treatment, spending six weeks in a private hospital in Pennsylvania but failing to follow out-patient treatments. Several psychiatrists testified for defendant, and one for the prosecution. All agreed that defendant was psychologically disturbed and emotionally unstable. One of defendant's doctors testified that at the time of the murder defendant had lost contact with reality. All felt that he was in need of psychiatric care, and in its absence his condition was deteriorating.
Two of the experts were of the opinion that defendant knew the nature and quality of his acts and the difference between right and wrong. One felt that while defendant probably knew what he was doing, he was unable to distinguish between right and wrong at the time of the crime. The fourth expert stated that he was unable to express an opinion. State v. Hale, supra, 45 N.J. at 261-262.
*110 It should be noted that notwithstanding the apparent abundance of testimony with respect to petitioner's sanity at the time of the commission of the crime, at no time during the proceedings was defendant's competence to stand trial brought into question, either from observation or at the suggestion of counsel. Petitioner seems to have conducted himself in an entirely normal fashion, and his counsel never urged any present insanity or any inability of defendant to cooperate with him during the trial.
Petitioner raises two points in support of a contention that his failure to file a timely application for post-conviction relief is due to "excusable neglect." The first of these points fails to speak to the immediate issue at bar. While admittedly petitioner could not have advanced the Pate argument on his direct appeal, it is clear that said decision was available to defendant well within the five-year period of limitation for post-conviction relief and could have been urged therein upon timely application.
Petitioner's second point, that he was not aware of the time limitation of R. 3:22-12 and that a defendant acting pro se should not be bound by time limits in the court rules to the same extent as a member of the bar, has some merit.
At the outset it should be noted that the construction of the words "excusable neglect," as used in R. 3:22-12, is a novel question in this jurisdiction. With due respect to the policy reasoning behind finality of judgments, State v. Blanchard, 98 N.J. Super. 22 (Law Div. 1967), it is clear that New Jersey's attitude with respect to compliance with procedural rules is consistent with federal decisions holding that post-conviction rules will not be so construed as to make them inadequate. Brown v. New Jersey, 395 F.2d 917 (3 Cir. 1968).
The only New Jersey authority dealing with the question at hand are those cases involving timeliness of direct appeals from judgments of conviction. See R. 2:4-1 et seq. As a general rule, attempts to appeal within time by convicted *111 defendants, particularly when incarcerated and not having advice or assistance of counsel, will be liberally appraised so as to have the right of review where reasonably possible as against objections of untimeliness. State v. Mason, 90 N.J. Super. 464, 478 (App. Div. 1966). In State v. Allen, 99 N.J. Super. 314, 323 (App. Div. 1968), defendant sought post-conviction relief on grounds that his not being advised of his right to appeal and of his right to counsel to prosecute an appeal deprived him of his right to effective assistance of counsel as guaranteed by the 5th and 14th Amendments to the Federal Constitution. In ordering that defendant be allowed to appeal out of time, the court stated:
The mandate that a rule shall not be relaxed must not be superseded lightly. But in this regard courts express a liberal attitude toward imperfect appeals by a convicted defendant, particularly when incarcerated and not having the advice or assistance of counsel. [at 322-323.]
Reasoning by analogy to the foregoing authority, it is evident that the policy reasons behind this State's liberal attitude toward imperfect direct appeals by convicted uncounselled defendants are also applicable to imperfect applications for post-conviction relief by defendants suffering the same state of circumstances. While the facts in Mason and Allen are distinguishable from the present case, similar stakes of "fundamental justice" are involved herein.
It is therefore concluded that the petition of this uncounselled defendant be considered on the ground that its untimeliness was due to petitioner's "excusable neglect," not withstanding the fact that defendant made no prior attempt to file a timely application. Cf. State v. Mason, supra.
Defendant further argues that Pate v. Robinson, supra, is applicable and should be given retroactive effect.
The application of Pate to the facts in this case or in any other has never been decided by the New Jersey courts. *112 Similarly, the issue as to whether the principle of Pate should be applied retroactively has never been decided in this jurisdiction.
In the federal courts the Pate decision has been applied retroactively though none of the cases speak directly to the issue of retroactivity itself. See Kibert v. Peyton, 383 F. 2d 566 (4 Cir.1967), involving a petition for the writ of habeas corpus by a defendant convicted of murder in 1959 and Lee v. Alabama, 386 F.2d 97 (5 Cir.1967), cert. den. 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1968), where petitioner sought habeas corpus relief from a 1942 conviction of murder.
In the absence of specific authority in this State, an examination of the policy reasons behind retroactive application of changes in judge-made law proves helpful. In State v. Blanchard, supra, defendant sought correction of alleged trial errors through use of post-conviction relief procedures. As a basis for relief, he relied upon two New Jersey Supreme Court decisions wherein the convictions of his codefendants were reversed on direct appeal. Both reversals stemmed from a finding by the Supreme Court of prejudicial trial error by virtue of the admission of the statements of five codefendants at the joint trial which contained references to each of the appealing defendants. In denying petitioner's application for post-conviction relief, the court discussed the underlying philosophy of retroactivity.
The problem has arisen in the main in recent years because of the many changes in judge-made law in the field of criminal jurisprudence and the determination of whether those changes shall be applied retroactively to those convicted under rules and law in existence during their trials. Even in cases involving issues of constitutional dimension, there can be no automatic application of the principle of retroactivity which would warrant a new trial for every convicted defendant because the current view of law demonstrates that he had been deprived of a constitutional guarantee. The Constitution neither prohibits nor requires retrospective effect of new judge-made law. Linkletter v. Walker, 381 U.S. 618, 629; 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). As observed by Justice Proctor in State v. *113 Johnson, 43 N.J. 572, 584 (1965), aff'd. 384 U.S. 719, 86 S.Ct. 1772; 16 L.Ed.2d 882 (1966):
"Society reasonably expects that when a man is convicted of a crime by a method not considered unfair according to the rules of law then in effect, that conviction will stand. Therefore unless some countervailing considerations of `the deepest sentiments of justice' compel otherwise, a new rule of criminal law should not be applied retroactively. * * *

* * * * * * * *
"Where the reliability of the guilt-determining process is seriously impugned, there is good reason for applying the new rule to a case already decided. It would offend our sense of justice to continue to incarcerate a convicted man where subsequent considerations cast grave doubts upon the reliability of the determination of his guilt. But where the conviction was obtained as a result of a procedure not considered fundamentally unfair at that time, and subsequent judicial decisions cast no substantial doubts upon the reliability of the determination already made, no compelling reason exists for disturbing a decision no longer subject to direct appeal." [98 N.J. Super. at 31 and 32]
Applying the foregoing principles to the instant case, it seems plain that Pate should be given retroactive effect. The issue of whether a defendant is competent to stand trial appears to have a direct bearing upon the reliability of the guilt-determining process. One who is insane at the time of trial is unable to comprehend his position  to consult intelligently with counsel and thus aid in the planning of his defense. The issue of competence to stand trial is of such import to the determination of guilt that in New Jersey, where the condition of a defendant's mind is brought into question at the time of trial, either from observation or by suggestion of counsel, the question should be immediately settled. State v. Peacock, 50 N.J.L. 34, 36 (Sup. Ct. 1887).
It is, therefore, concluded, based upon the trend in the federal courts and the policy reasons behind the doctrine of retroactivity, that Pate be given retroactive application in the present case.
In considering the effect of Pate on this case, it is helpful to examine the state of law in our jurisdiction prior to that decision. In addition to N.J.S. 2A:163-2, specifically *114 authorizing the trial judge to conduct a hearing in advance of trial to determine the sanity of the accused at that time upon application by counsel, it has long been recognized in New Jersey that such inquiry may be made during the course of the trial, on motion of either the court or counsel. State v. Lucas, 30 N.J. 37, 72 (1959). In State v. Peacock, supra, Mr. Justice Reed held:
It is undoubtedly the law that a person who by reason of insanity is unable to comprehend his position, and to make his defense, cannot be placed upon trial for a crime. If the court either before or during the progress of such a trial, either from observation or upon the suggestion of counsel, have facts brought to its attention which raises a doubt of the condition of defendant's mind in this respect, the question should be settled before another step is taken. The method of settling this preliminary question, where it is not the subject of statutory regulation, is within the discretion of the trial court. The court can itself enter upon the inquiry, or submit the question to another jury empaneled for that purpose. [50 N.J.L., at 36; emphasis added]
In State v. Lucas, supra, defendant, who allegedly set fire to a church rectory resulting in several deaths, was convicted of felony murder. At the trial substantial psychiatric testimony was proffered on the issue of insanity at the time of the commission of the crime and at the time defendant confessed. At no time during the trial was the present mental condition of defendant brought into question. On appeal from his conviction defendant contended that the trial court erred in failing, on its own motion, to embark upon a collateral inquiry into his mental capacity to stand trial. The Supreme Court affirmed the judgment, and with respect to the issue of defendant's ability to stand trial declared:
* * * While the court has the power to order an inquiry in the defendant's mental qualifications to stand trial, failure to exercise the powers will not be reviewed on appeal, unless it clearly and convincingly appears that the defendant was incapable of standing trial. It is to be ordinarily expected that defense counsel, who is in a far better position than the trial judge to assay the salient facts concerning the defendant's ability to stand trial and assist in his own defense, *115 would originate the request that such an inquiry be conducted.

* * * * * * * *
From these proofs we cannot conclude that the trial court was under any duty to conduct a collateral inquiry into the defendant's ability to stand trial. [30 N.J. at 73 and 74]
Similarly, in State v. Auld, 2 N.J. 426 (1949), defendant was convicted of murder in the first degree. When arraigned he pleaded "insanity," but the court refused to enter such a plea and caused one of "not guilty" to be entered. On appeal it was contended that such action was reversible error and that the court was under a duty, by virtue of the plea, to conduct an inquiry or investigation of defendant's present sanity. The judgment of conviction was affirmed and the Supreme Court held:
Outside of the fact of the plea itself there was nothing to warrant any investigation into the sanity of the defendant. The fact he entered his plea himself while represented by counsel, and thereafter actively participated in the trial itself, conducting himself in what appears to have been an entirely normal fashion, that his counsel never suggested any present insanity or any inability of the defendant to properly co-operate with him and that defendant's own psychiatric experts testified his mental condition was one of sanity lends no support whatever to this argument. We hold it without substance. [at 435]
The significance of the foregoing authority is to show that New Jersey has been well aware of the constitutional rights of an incompetent to stand trial, long before Pate was decided. Prior to Pate, where there were facts brought to the attention of the court raising "doubt" as to the condition of the accused's mind, it was incumbent upon this State's trial court to conduct an independent inquiry of defendant's present sanity. State v. Peacock, supra, 50 N.J.L. at 36. What the decision in Pate did was to make clear that the failure of a state court to conduct such a hearing would be tantamount to a denial of due process of law as guaranteed by the 14th Amendment to the United States Constitution.
*116 Perhaps the major contribution of Pate is its assertion of the "bona fide doubt test" which is to be used in ascertaining whether a sanity hearing is warranted in a particular case. Rather than holding petitioner to the stringent burden of showing by clear and convincing proof that he was incapable of standing trial, State v. Lucas, supra, Pate simply holds that "where the evidence raises a (mere) `bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing." 383 U.S. at 385, 86 S.Ct. at 842, 15 L.Ed.2d 815.
Before turning to the immediate facts, it is pertinent to consider the quality of incompetence which the record below is supposed to indicate. A claim that a defendant is incapable of standing trial does not present the same considerations as a claim that he was legally irresponsible for his criminal behavior, though both claims may be based upon mental aberration. In the common law tradition controversies about criminal responsibility have been resolved by inquiry into the capacity to understand the nature and character of conduct and to distinguish right from wrong. In contrast, a claim of trial incapacity brings into question the ability of the accused to consult effectively with his lawyer and to supply him with information relevant to the matter charged and his involvement, if any, in it. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). While an accused may have a mental disorder, he may nevertheless understand his position and be able to assist fully in his defense. State v. Coleman, 46 N.J. 16 (1966).
[A defendant] may have a mental disease, and the mental disease may have been the cause of his criminal act and he may be suffering from the same disease at the time of his trial; but it is a scientific fact that he nevertheless may be competent to stand trial under this definition of competency. * * * "To assist in his defense" of course does not refer to legal questions involved but to such phases of a defense as a defendant usually assists in, such as accounts of the facts, names of witnesses, etc. * * *. [Aponte v. State, 30 N.J. *117 441 at 452-453, citing from the opinion in Lyles v. United States, 103 U.S. App. D.C. 22, 254 F.2d 725 at 729 (D.C. Cir. 1957), cert. den. 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958)]
In Aponte v. State, 30 N.J. 441 (1959), involving an appeal from a conviction of murder wherein defendant urged his incapacity to stand trial, our Supreme Court set down the appropriate test to be used in determining insanity for purposes of standing trial.
As a test of ability to stand trial on a criminal charge, insanity means a mental illness or condition which prevents the accused from comprehending his position and from consulting intelligently with counsel in the preparation of his defense. [at 450; citations omitted]
In the present case, as stated heretofore, Hale's background discloses a history of somewhat disturbed behavior due primarily to excessive drinking. While all the psychiatrists at the trial testified that he was psychologically disturbed and in need of psychiatric care, none stated unequivocally that he was insane. The warden of the jail in which Hale was confined pending his prosecution testified that throughout Hale's stay he mingled well and got along with all the prisoners. On several occasions the warden had personal conversations with defendant concerning subjects such as culinary art and music.
Even though there was abundant testimony with respect to petitioner's sanity at the time of the crime, at no time during the proceedings was his competence to stand trial brought into question. In fact, on several occasions defense counsel took quite the opposite position. Objecting to the testimony of Warden O'Connor on the grounds of irrelevance and improper rebuttal evidence, defense counsel urged that the proceeding below involved no issue of defendant's sanity at the time of trial.
[Defense counsel]: If you recall, Your Honor, even in cross-examining Dr. Yaskin, I asked could the defendant as now seated here have full contact with reality, and he said, yes. * * * *118 Similarly, in his summation defense counsel stated concerning defendant's mental condition:
* * * I have unbending belief, members of the Jury, that Matthew Hale * * * could be sitting right here now knowing the difference between right and wrong, he could sit right there and talk to you as intelligently as he talked to that warden, and these psychiatrists know it, they told you that he was cooperative, he talked to them, and other different things they considered, but at the time of the killing, members of the Jury, these psychiatrists have convinced me, and from what I have been informed about psychiatry, that this man should be found not guilty.
During the trial petitioner conducted himself in a normal fashion. He testified that he had no recollection of the actual shooting, but gave an accurate account of the events leading up to the incident. Hale's answers to the questions were responsive and coherent. He cooperated fully throughout the trial and in no way acted in a manner that would draw into question his present sanity.
From the foregoing facts it is clear that petitioner had the capacity to comprehend his position and consult intelligently with his counsel in the preparation of his defense. Cf. State v. Lucas and State v. Auld, supra. That Hale could not recollect all the events surrounding the shooting is not fatal to his competence to stand trial. See State v. Pacheco, 106 N.J. Super. 173 (App. Div. 1969), aff'd 54 N.J. 579 (1969), cert. den. 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 65 (1970).
While petitioner relies heavily upon Pate, nothing in the record gives rise to a "bona fide doubt" of defendant's sanity at the time of trial. The indicia of incapacity were not so impressive and those of capacity so slight that fundamental fairness dictated that the trial judge, acting "sua sponte," should have interrupted the trial and instituted formal inquiry into this matter. United States ex rel. Roberts v. Yeager, 402 F.2d 918, 919 to 920 (3 Cir.1968). See also United States ex rel. Rizzi v. Follette, 367 F.2d 559 (2 Cir.1966); Schoeller v. Dunbar, 423 F.2d 1183 (9 Cir. *119 1970), cert. den. 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); Hawks v. Peyton, 370 F.2d 123 (4 Cir.1966), cert. den. 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1964). (1964).
A marked distinction exists between the facts showing incompetency to stand trial in Pate and in the instant case. In Pate the defendant was convicted of murdering his common law wife. He had a long history of disturbed behavior. Several years before the crime charged, he had been committed for eight months to a mental hospital. He had experienced delusions, periods of withdrawal and loss of memory. He had committed a prior homicide, killing his infant son. He had repeatedly committed or threatened acts of violence upon other persons. There was other evidence of bizarre and irrational behavior. Most significantly, four defense witnesses testified that Robinson was insane. Additional evidence concerning his mental condition had been proffered but excluded. His attorney had stated repeatedly during the trial that his client was incapable of standing trial, though he had not demanded a formal hearing on the issue. The trial court completely rejected Robinson's claim of insanity.
It is, therefore, my opinion, even assuming the retroactive effect of Pate, that the failure of the trial court herein to hold a sanity hearing, sua sponte, on defendant's competence to stand trial, was not a violation of his right to due process where the evidence did not raise a "bona fide doubt" as to the condition of his mind at the time of trial.
For the reasons herein stated, it is concluded that, based upon the trial record below, petitioner's application for post-conviction relief is without merit and, therefore, denied.