## STATE OF MARYLAND *v.* DAVID WILSON BROWN

[No. 677, September Term, 1973.]

*Decided April 23, 1974.*

The cause was argued before ORTH, C. J., and DAVIDSON and MOORE, JJ.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph Wase, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Stephen E. Harris,* with whom was *Paul M. Sandler* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

I

The administration of justice in this jurisdiction has its roots in the common law, for the People, in declaring their rights upon the founding of this State, asserted "That the Inhabitants of Maryland are entitled to the Common Law of England, * * *." Art. 5, Declaration of Rights, Constitution of Maryland. Thus, the common law of England *en masse,* as it existed in England on 4 July 1776, and as it prevailed in Maryland either practically or potentially, except such portions thereof as were inconsistent with the spirit of the Constitution and the nature of our political institutions, prevails today, unless changed by legislative enactment or judicial decision. *McGraw v. State,* 234 Md. 273; *Lickle v. Boone,* 187 Md. 579; *State v. Buchanan,* 5 Har. & J. 317; *Latz v. Latz,* 10 Md. App. 720.

At the common law, a rule usually referred to as the "year and a day rule" was firmly established. It declared that the law will not recognize a homicide unless the death has resulted within a year and a day from the time of the act which is alleged to have caused the death. Perkins, *Criminal Law* (2d ed. 1969) 28.[1] Blackstone stated: "In order also to make the killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered * * *." 4 *Commentaries on the Laws of England* 197.[2] William Hawkins, Sergeant at Law, speaking

---

1. The rule is usually spoken of in terms of murder. In *Rex v. Dyson,* L. R. (1908) 2 K.B. 454, the common law rule was reasserted by the Court of Criminal Appeal even in a case of manslaughter.

2. In commenting on the requisites of indictments, Blackstone said, at

"Of Murder" in 1 *Pleas of the Crown,* ch. 13, § 9, said: "Also it is agreed, that no person shall be adjudged by any act whatever to kill another who doth not die thereof within a year and a day after * * *."

The rule is not a statute of limitations. A statute of limitations sets the time within which the prosecution can be commenced after the crime has been completed. The year and a day rule provides that the crime is not committed unless the death occurs within a year and a day after the accused's act.[3] "In other words [in a criminal prosecution] death cannot be attributed to a blow or other harm which preceded it by more than a year and a day. In such a case the loss of life is attributed to natural causes rather than to the human act which occurred so long ago." Perkins, *Criminal Law* (2d ed. 1969) 28. Thus, if death ensues more than a year and a day from the act of the accused, there is a conclusive presumption that the death was not caused by that act. On the other hand, if death occurs within a year and a day of the act, the rule does not bar a prosecution brought any time during the life of the offender. We are aware of no state upholding the year and a day rule which has a limitation on prosecution for murder.

---

306: "[A]nd in case of murder, the time of the death must 'formerly have been' laid, 'and must still be shown to have been' within a year and a day after the mortal stroke was given." Hochheimer, *Criminal Law* (1st ed. 1904) said, § 678, about an indictment for murder, that the time of the injury and death must be alleged in order that it may appear that the death ensued within a year and a day from the injury. In *Ball v. United States,* 140 U. S. 118, the Court held that an indictment was no longer fatally defective, as it was at common law, if the date of death was not alleged to show that death occurred within a year and a day after the stroke, but the indictment was brought within that time.

**3.** At common law, criminal proceedings may be instituted at any time during the life of the offender. Hochheimer, *Criminal Law* (1st ed. 1904) § 87. In Maryland this rule has been modified by legislative enactment with respect to all misdemeanors not made punishable by confinement in the penitentiary by statute. Prosecution for such offenses shall be instituted within one year after the offense was committed. Courts and Judicial Proceedings Article (Courts Art.) § 5-106 (a). Prosecution for certain offenses under the motor vehicle code shall be instituted within 2 years after the offense was committed, Courts Art. § 5-106 (b), and prosecution for Sabbath breaking and drunkenness shall be instituted within 30 days after the offense was committed, Courts Art. § 5-106 (c). See *Spillers v. State,* 10 Md. App. 643; *Duvall v. State,* 5 Md. App. 484. See also Courts Art. § 5-107.

Although the year and a day period was apparently arbitrarily set, the addition of a day may be explained by the ancient rule "that, in criminal law, in reckoning a period from the doing of any act, the period was to be taken as beginning on the very day when this act was done." Kenny, *Outline of Criminal Law* (4th ed. 1909) 140. Both Blackstone in 4 *Commentaries on the Laws of England* 197, and Hawkins in 1 *Pleas of the Crown*, ch. 13, § 9, said that in the computation of the period "the whole day on which the hurt was done shall be reckoned the first." Lord Coke explained the reason for the extra day: "[F]or regularly the law maketh no fraction of a day: and the day was added, that there might be a whole year at the least after the stroke, or poyson, etc. . . ." 3 Coke, *Institutes* 53 (2d ed. 1648).[4]

The reason for the rule is not definitely known. Clark & Marshall, *Law of Crimes* (7th ed. 1967) § 10.00 ascribed it to

---

4. The period of a year and a day was not unknown in the ancient law. It appeared in appeals of death and inquisitions against deodands. Appeals of death were a private process for the punishment of public crimes. 4 *Bl. Comm.* 312, 313. Regarding such appeals Hawkins said, 2 *Pleas of the Crown*, ch. 23, § 88: "* * * and also from the manifest reason of the thing, that it may appear that the party died within the year and a day after the stroke, in which case only the law intends that the death was occasioned by it." See 6 Edw. I, Sta. Glouc. c. 9. Inquisitions of deodands were brought to forfeit to the king personal chattels that were the immediate occasion of the death of any reasonable creature. 1 *Bl. Comm.* 300. Hawkins stated that "if the party wounded die not of his wound within a year and a day after he receive it, there shall be nothing forfeited, for the law does not look on such a wound as the cause of a man's death, after which he lives so long * * *." 1 Hawkins, *Pleas of the Crown*, ch. 8, § 7.

The period appears in other aspects of the ancient law. Henry II in his charter for Nottingham declared that "if any one, whencesoever he be, shall dwell in the borough a year and a day in time of peace, no one, except the king, shall have any right in him." 1 Pollock & Maitland, *The History of the English Law* (1968) ch. 3, § 8, p. 649. In connection with certain writs of entry, if judgment was followed by inaction by a third party for a year and a day he may be precluded from claiming the land. 2 *id.*, ch. 4, § 2, p. 76. As to possession of land by "fine", that is "the final concord levied in the king's court", a preclusive term of a year and a day after the concord was made in court established a bar. 2 *id.*, ch. 4, § 3, p. 102. The law strove to define the various reasonable causes which might prevent a man from keeping his day in court. For every cause of delay — "essoins", or excuses for non-appearance — it assigned a definite period. Even a bed-sickness would not absolve a man for more than a year and a day. 2 *id.*, ch. 9, § 1, p. 563. No essoin at all was allowed to a man who was charged with a disseisin. The long essoin for year and day could only be allowed where there was a solemn question of "right" in dispute and the litigants were in peril of being "abjudged" from the debatable land forever. *Idem.*

expediency. "The common law rule is one of expedience, probably formulated because of medical difficulties encountered in proving cause of death when a considerable lapse of time intervened between an act or omission, and final cessation of life." This follows the reasoning of Lord Coke, who said, 3 *Institutes* 53 (2d ed. 1648): "The reason assigned for that rule was that if the person alleged to have been murdered 'die after that time, it cannot be discerned, as the law presumes, whether he died of a stroke or poyson, etc., or a natural death; and in case of life, the rule of law ought to be certain'." Kenny, *Outlines of Criminal Law* (4th ed. 1909) 140 thought that the rule "was a wise precaution in view of the defectiveness of medical science in mediaeval days." Perkins suggested that the "limitation dating back to antiquity, was dictated by difficulties of proof * * *." *Criminal Law* (2d ed. 1969) 29. It seems likely that the rule was created as a safeguard against murder convictions when the cause of death was uncertain and medical conjecture was the only means available for determining it. But, regardless of the reason for its creation, the rule has had overwhelming support in the United States. The courts of those states who have considered it, with the exception of New York,[5] and Pennsylvania,[6] have recognized and applied the rule. The Supreme Court of the United States recognized the rule in *Louisville, E. & St. L. R. R. v. Clarke*, 152 U. S. 230, and discussed its history at length. At least eleven states have statutes expressly promulgating the rule, and judicial decisions, holding that legislative silence does not abrogate the rule, but rather is evidence that it should persist, have introduced the rule in states without statutory provisions. See 20 A.L.R. 1004; 37 North Dakota L. Rev. 377 (1961). Perkins found that the rule remains in full force in most states. *Criminal Law* (2d ed. 1969) 29.

---

**5.** *People v. Brengard*, 265 N. Y. 100, 191 N. E. 850, in which the New York Court of Appeals decided that because all crimes in New York were statutory, by omitting the rule from the code definition of murder, the legislature indicated an intention to abrogate it.

**6.** *Commonwealth v. Ladd*, 166 A. 2d 501 (Pa. 1960). The rationale of the holding was that the common law rule was not part of the definition of murder, but only a rule of evidence or procedure subject to judicial change when modern medical advances left it outmoded.

The cases are about equally divided on whether the rule is a substantive part of the definition of murder or whether it is a rule of evidence.[7] In any event, we subscribe to the view set out in a note entitled *"The Abolition of the Year and A Day Rule: Commonwealth v. Ladd"*, 65 Dickinson L. Rev. 166 (1961) at 169:

> "When a court is abolishing a rule of law, it is submitted that the proper exercise of judicial power should be explained and supported by broad policies concerning the criminal law rather than narrow determinations resting on very technical bases. The aim and purpose of the criminal law is to provide adequate protection for society and simultaneously assure justice for the individual accused. A balance between the two requires a determination which necessarily varies with the environment and background of the particular individual making the inquiry. For this reason it seems that alteration or modification of the criminal law (other than a mere procedural rule) should be made by the legislature where a more representative determination may be made."

That change, if advisable, should be by legislative action, was suggested by Clarke and Marshall, *Law of Crimes* (7th

---

**7.** As we have indicated, footnote 6, *supra*, the rule was abrogated by judicial decision in Pennsylvania on the premise that it was a rule of evidence, a majority of the court believing that Blackstone's definition of murder lacked the year and a day rule. A concurring opinion took the view that the rule was substantive but had never been adopted as part of the common law of Pennsylvania. A vigorous dissent reasoned that since Pennsylvania had adopted the common law of England by statute, and had never abrogated the common law by appropriate legislation, the year and a day rule was still in effect in Pennsylvania. Blackstone used what he purported to be Coke's description of murder: "Murder is, therefore, now thus defined or rather described by Sir Edward Coke: 'when a person of sound memory and discretion, unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied.'" 4 *Bl. Comm.* 195. But Coke's definition, as written in 1628, continued after the word "implied", "* * * by law, so as the party wounded, or hurt, &c. die of the wound, or hurt, etc. within a year and a day after the same." 3 Coke, *Inst.* 47 (1797). And Hawkins, in 1716, included the rule within his definition of murder, 1 Hawkins, *Pleas of the Crown* (8th ed. 1824) ch. 13, p. 90, note 1, as did Warren, 1 Warren, *Homicide* 185 (perm. ed. 1938).

ed. 1967) § 10.00: "Legislative changes of this arbitrary rule can be undertaken consistent with modern advances in medical science." Perkins in his *Criminal Law* (2d ed. 1969) 29, although agreeing that change in the rule should be by statute, added the caveat that "before it is eliminated by legislation a careful study should be made to determine whether or not it serves some other useful purpose."

It is patent that major advances have been made in medical science and that improvements have been attained in scientific crime detection. The trier of fact need not, as did the early English juries, find a verdict upon its own knowledge or merely give expression to the community conviction on the question, but today may place reliance on the testimony of expert witnesses. But even so, we are not prepared to say that the rule of a year and a day is presently anachronistic, or that such period, after which death is conclusively presumed to result from natural causes, is no longer realistic. Abolition of the rule may well result in imbalance between the adequate protection of society and justice for the individual accused, and there would remain a need for some form of limitation on causation.

It follows from what we have said that, although there does not appear to be a case in this jurisdiction applying the common law rule,[8] we think that it is in full force and effect in Maryland. We so hold. It is evident from what we have said that we are of the opinion that if change is to be made in the rule it should be by the General Assembly because expression and weighing of divergent views, consideration of potential effects, and suggestion of adequate safeguards, are better suited to the legislative forum.[9]

---

**8.** This Court referred to it by way of *obiter dictum* in *State v. Hamilton*, 14 Md. App. 582, note 10, at 587, and in *Whitehead v. State*, 9 Md. App. 7, note 2, at 9. It has been said that the rule often subsists only because of the infrequency of contested cases. Note, 37 North Dakota L. Rev. 377, 378 (1961).

**9.** For discussion of the rule in articles other than those cited, see Note, 14 Vanderbilt L. Rev. 1532 (1961); Note, 46 Iowa L. Rev. 883 (1961); Note, 3 Arizona L. Rev. 294 (1961); Note, 40 North Carolina L. Rev. 327 (1962); Note, 15 Tulane L. Rev. 306 (1941); Note, 19 Chicago-Kent L. Rev. 181 (1941).

## II

On 25 January 1973 a presentment and indictment were filed in the Criminal Court of Baltimore charging that DAVID WILSON BROWN (appellee) on 14 November 1970 "feloniously, wilfully and of deliberately premeditated malice aforethought did murder one Patsy Ann Brown." On 15 May 1973 appellee filed a motion to dismiss the indictment, alleging primarily "that the allocations contained in the Indictment * * * show on their face that the offense that is purportedly charged in that Indictment was abated at the time of the filing thereof and, therefore, cannot constitute the basis for a criminal prosecution under the laws of the State of Maryland." On 25 May the motion was heard in the Criminal Court of Baltimore. It was not disputed that the victim was injured by the act of appellee on 14 November 1970 and died on 13 September 1972.[10] Appellee relied on the year and a day rule in support of his motion. On 1 August 1973 the court granted the motion to dismiss the indictment, finding that the year and a day rule is viable and valid in Maryland. After discussing various authorities, the court said:

"In conclusion, this Court finds that the 'year and a day rule' was part of the common law of England, and that it is still applicable in Maryland to prosecutions for murder. This Court firmly believes that to change the common law rule by judicial decision would be usurpation of legislative authority." [11]

---

10. The crime is committed on the date the mortal wound is inflicted. Clark and Marshall, *Law of Crimes* (7th ed. 1967) § 10.00, p. 602, note 11.

11. In reaching its conclusion, the Court said:

"This Court is hesitant to take such judicial notice of a subject which clearly calls for complex expert evidence. Although the main reason at common law for the arbitrary 'year and a day' limitation appears to be based on reasonable doubt that medical knowledge, such as it then existed, was capable (at some point in time) of establishing causation between an injury to a victim and ensuing death, it cannot be definitively stated by this Court, in the absence of expert testimony, that contemporary medical science is capable of establishing causation after the lapse of a year and a day."

It noted:

"It should be stated here that the State did not produce any

The State appealed, Court Art. 12-302 (c), claiming that the court erred in granting the motion to dismiss the indictment. It accepts that "[i]t is the law of Maryland that a person cannot be convicted of murder if the victim dies more than a year and a day after the assault which caused the death", but urges that we abrogate the rule.

We are in full accord with the court below. The common law rule being applicable, and more than a year and a day elapsing from the infliction of the injury to the date of death, the law does not recognize the homicide, and appellee could not be adjudged by his act on 14 November 1970 to have killed Patsy Ann Brown. The court below did not err in granting the motion to dismiss the indictment.[12]

> *Order of 1 August 1973 dismissing the indictment affirmed; costs to be paid by the Mayor and City Council of Baltimore.*

---

evidence at the hearing to the effect that modern medicine is capable of demonstrating causation between a wound that was inflicted more than a year and a day before the victim died, and the death itself."

**12.** Whether David Wilson Brown may be indicted and tried for other offenses appropriate to his conduct on 14 November 1970 is not now before us.