148 N.J. Super. 405 (1977)
372 A.2d 1117
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROOSEVELT YOUNG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1977.
Decided March 14, 1977.
*407 Before Judges BISCHOFF, MORGAN and FURMAN.
Mr. Stanford M. Singer, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. James R. Kinarney, Assistant Deputy Public Defender, of counsel; Messrs. James R. Kinarney and Alexander R. Lehrer on the brief).
Mr. Robert E. Rochford, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by BISCHOFF, J.A.D.
This appeal presents the novel issue of whether New Jersey recognizes the common law rule that, in order to constitute punishable homicide, death must occur within "a year and a day" of the inflicting of the mortal wound.
The facts are relatively uncomplicated.
On September 17, 1972 defendant Roosevelt Young entered the home of his estranged wife, Patricia. Once inside he saw Samuel Story sitting in the dining room with Patricia. As defendant drew a gun Story ran from the dining room to the kitchen with defendant following. The two men had angry words in the kitchen and Story fled to the front door with defendant in pursuit. Defendant fired five shots, three of which hit Story, who "slumped" over the TV set by the door.
Defendant left the house and shortly thereafter surrendered to the police. Story was taken to a hospital where it was ascertained *408 that one of the bullets had entered his neck, causing severe damage to his spinal cord, resulting in complete paralysis from the neck down including all four extremities. He received extensive treatment at the hospital and was ultimately transferred to a nursing home. His condition deteriorated and he was again hospitalized; he died on November 17, 1973, 1 year and 63 days after the shooting.
Testimony of the medical examiner, who performed an autopsy on Story, established the cause of death as "pneumonia secondary to a state of quadraplegia due to the gunshot wounds." In his opinion, the death of Story was directly related to the gunshot wounds.
Defendant was first indicted July 3, 1973, while Story was still alive, for assault with an offensive weapon upon Samuel Story, contrary to N.J.S.A. 2A:90-3; assault with intent to kill, contrary to N.J.S.A. 2A:90-2; and on January 25, 1974, after the death of Story, defendant was indicted for murder, contrary to N.J.S.A. 2A:113-2. The indictments were consolidated.
Defendant's motion to dismiss the murder indictment on the ground that prosecution for murder was barred by the common law "year and a day rule" was denied, as was defendant's motion for severance.
Defendant was convicted by a jury of second degree murder, assault with an offensive weapon and assault with intent to kill. He was sentenced to a term of 15 to 25 years for the murder and concurrent terms of 5 to 7 years on each of the other two convictions.
Defendant contends the trial judge erred in refusing to dismiss the murder indictment since "Story died 1 year and 63 days after he was shot by defendant" and "the common law year and a day rule, applicable in New Jersey, barred the indictment." Our consideration of this legal issue is anchored in two facts not in dispute: (1) the year and a day rule did exist at common law, and (2) the death of Story was caused by the gunshot wounds inflicted by defendant 1 year and 63 days earlier.
*409 The State, while conceding the existence of the "year and a day rule" at common law, argues the rule has never been  and should not now be  adopted as part of the law of this State.
The common law of England has a constitutional basis in our jurisprudence. It was provided in the State Constitution of 1776, Section XXII, "That the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature; such parts only excepted, as are repugnant to the rights and privileges contained in this charter; * * *." The 1844 Constitution ordained, Article X, Section I, that "The common law and statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature." And the 1947 Constitution, Article XI, Section I, paragraph 3, declares that "All law, statutory and otherwise, all rules and regulations of administrative bodies and all rules of courts in force at the time this Constitution or any Article thereof takes effect shall remain in full force until they expire or are superseded, altered or repealed by this Constitution or otherwise." [Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 48-49 (1958) (Heher, J. dissenting)]
It is abundantly clear from this brief history that the common law of England remains a constituent element of the basic law of this State, and it persists unless changed by the Legislature or judicial decision. 1 Schlosser, Criminal Law of the State of New Jersey (3d ed. 1970), § 3.
We therefore conclude that the so-called "year and a day rule" has been and is part of the basic law of this State. Cr. State v. Koonce, 89 N.J. Super. 169 (App. Div. 1965). It remains to be determined whether it should continue to remain in effect.
Our courts have not hesitated to reject, modify or alter common law principles when they no longer conform to present day equitable or humanitarian views, and this is so in both civil and criminal cases. Greenspan v. Slate, 12 N.J. 426 (1953); In re Vince, 2 N.J. 443 (1949); Collopy v. Newark Eye and Ear Infirmary, supra; Immer v. Risko, 56 N.J. 482 (1970); State v. Koonce, supra; Loudon v. *410 Loudon, 114 N.J. Eq. 242 (E. & A. 1933); cf. Schomp v. Schenck, 40 N.J.L. 195 (Sup. Ct. 1878).
The reason for this "year and a day rule" is not completely clear, but it is generally thought to be a safeguard against murder convictions when the cause of death is uncertain and medical conjecture the only means of determining it. State v. Brown, 21 Md. App. 91, 318 A.2d 257 at 260[1] (Ct. App. 1974).
The rule is to be distinguished from a statute of limitations, which bars prosecution for a crime which did occur, and declares that the crime of murder did not occur unless death followed within a year and a day of the inflicting of the mortal wounds. State v. Brown, supra at 259. The rule has been invoked in at least five cases in the United States where death occurred beyond the stated time period. Head v. State, 68 Ga. App. 759, 24 S.E.2d 145 (Ct. App. 1943); State v. Dailey, 191 Ind. 678, 134 N.E. 481 (Sup. Ct. 1922); State v. Moore, 196 La. 617, 199 So. 661 (Sup. Ct. 1940); State v. Brown, 21 Md. App. 91, 318 A.2d 257 (Ct. App. 1974); Elliott v. Mills, 335 P. 2d 1104 (Okl. Crim. App. 1959). See Annotation, "Homicide  Time Between Injury and Death," 60 A.L.R.3d 1323.
Two jurisdictions have enlarged the rule by a statute to bar prosecution where the death occurs within three years and a day: California (West's Anno. Cal. Codes (Penal) § 194) and Washington, (Rev. Code Wash. Ann. § 9.48.010). New York has statutorily abolished the rule completely (People v. Brengard, 265 N.Y. 100, 191 N.E. 850 (Ct. App. 1934); People v. Legeri, 239 App. Div. 47, 266 N.Y.S. 86 (App. Div. 1933)), and Pennsylvania has rejected the rule by judicial decision (Commonwealth v. Ladd, 402 Pa. 164, 166 A.2d 501 (Sup. Ct. 1960)). The rule has been the subject *411 of extensive comment in law reviews, some urging jurisdictions who have not adopted the rule to reject it as an anachronism[2], others urging its abolition by legislation.[3].
While neither our Legislature nor our courts have spoken on this specific issue, the public policy with respect to it may be discerned from a consideration of related matters. One manifestation of the public policy which looks with disfavor on any time limitation on prosecution for murder is N.J.S.A. 2A:159-2, which provides:
Except as otherwise expressly provided by law no person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within five years from the time of committing the offense or incurring the fine or forfeiture.
By the terms of this enactment the Legislature sought to insure that a person charged with capital offenses should not escape justice.[4]
In State v. Zarinsky, 143 N.J. Super. 35 (App. Div. 1976), this court affirmed the murder conviction of a defendant who was indicted for murder 5 1/2 years after commission of the offense, despite the fact that murder is not *412 now punishable by death. We there held that the legislative purpose for the capital crimes exception in N.J.S.A. 2A: 159-2 is to guarantee that such offenses would "never be insulated by time." State v. Zarinsky, supra at 49. Adoption of the common law "year and a day rule" would defeat the public policy favoring the "relentless prosecution of murders." Id., at 51.
In State v. Thomas, 61 N.J. 314 (1972), it was held that a murder prosecution may be instituted where the victim died at a date substantially after the initial assault, even if the defendant has been convicted and sentenced for the assault prior to the time the victim dies. (In that case the assault had occurred on June 5, 1969 and the death on January 23, 1970. The court there quoted approvingly from State v. Randolph, 61 Idaho 456, 102 P.2d 913, 914 (1940):
Certainly the state need not on the one hand wait after every battery for a year and a day to determine whether the assaulted party dies and then proceed, or lose the right to prosecute for the greater offense. Nor on the other hand would it be just to hold an assaulting defendant for a year and a day as a potential murderer on the possibility of death ensuing within that time.
See also, State v. Anderson, 135 N.J. Super. 423, 428-29 (Law Div. 1975).
Finally, we refer to In re Quinlan, 70 N.J. 10 (1976), where it was held that there exists in New Jersey a constitutional right to refuse extraordinary medical treatment designed only to prolong the life of a hopelessly incapacitated patient. The court recognized advances in medical technology to which the law must respond.
The acceptance or rejection of available medical technology and machines which can postpone the actual time of death, due whenever it occurs, as a result of wounds inflicted upon a victim, should not insulate the assailant from trial and punishment for the crime.
The common law "year and a day rule" does not conform to present-day medical realities, principles of equity or *413 public policy. We reject it as an anachronism and declare that it is no longer part of the common law of this State.
That brings us to the consideration of whether this declaration should be prospective only, or should apply to defendant so as to affirm his conviction for second degree murder.
In the civil field, whenever the court has changed a common law doctrine, it has not hesitated to apply it to the case before it, Collopy v. Newark Eye and Ear Infirmary, supra; Immer v. Risko, supra, and as to all transactions which can be reached by it, Johnson v. State, 18 N.J. 422 (1955), excluding from the new rule only transactions where property or contract rights have vested or where extreme hardship will result. Johnson v. State, supra at 429.
The rule is different in criminal cases where "it is uniformly recognized that it would be fundamentally unjust to render criminal, by an overruling decision, conduct which was not criminal when it occurred. This would be the equivalent in effect on the accused of an ex post facto statute." State v. Koonce, supra, 89 N.J. Super. at 185. This rule has its roots in the principle that if one performs an act in reliance upon a statute or decision declaring it lawful, his acts should not be rendered criminal by a later overruling decision. Johnson v. State, supra, 18 N.J. at 428; State v. Koonce, supra, 89 N.J. Super. at 185; State v. Saulnier, 63 N.J. 199, 208 (1973); Cf. Marks v. United States, ___ U.S. ___, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); State v. Hatch, 64 N.J. 179, 189 (1973); Annotation, 10 A.L.R.3d 1371; 20 Am. Jur.2d, Courts, § 236 at 563 (1965).
Underlying the cases mandating a prospective application of a new rule in the criminal field is either (a) an element of reliance on the old rule by the accused, or (b) the basic unfairness of declaring a person guilty of a crime when that act was innocent when committed.
As to the first, there is not a shred of evidence to show defendant relied upon the "year and a day rule" when he shot, crippled and mortally wounded Story. It would be *414 preposterous to assert that he relied upon the victim living for more than a "year and a day" before expiring.
As to the second, there was nothing innocent about the act of shooting Story. Since the principles which historically have moved the courts to prospective application only are not present here, we apply our decision to the case now before us.
We hold that the trial judge properly refused to dismiss the indictment for the reason that the death of the victim did not occur within one year and one day of the shooting.
Defendant also contends that (1) the trial judge committed plain error in accepting the verdict of guilty as to the charge of murder without ascertaining a specified degree of guilt; (2) defendant is entitled to modification of the sentence on his conviction of second degree murder because the judge improperly concluded that defendant had committed first degree murder and relied upon this conclusion in passing sentence, and (3) the sentence of 15 to 25 years on the conviction of second degree murder was manifestly excessive and unduly punitive.
We find these contentions to be clearly without merit. R. 2:11-3(e)(2).
Defendant's final contention, that "the convictions for the crimes of assault with intent to kill and assault with an offensive weapon merge with the conviction for the crime of second degree murder," has merit.
An accused may not be twice punished for the same offense. Here, defendant participated in the conduct of a single criminal episode. The several crimes for which he was tried and convicted represent different stages of the episode. State v. Best, 70 N.J. 56, 60 (1976); State v. Davis, 68 N.J. 69 (1975).
We, therefore, vacate the judgments of conviction for assault with intent to kill and assault with an offensive weapon and the sentences imposed thereon.
As modified, the judgment is affirmed.
NOTES
[1] See Note, "Homicide  Why Death in a Year and a Day," 19 Chi. Kent L. Rev. 181-182 (1941); "Criminal Law  Homicide  Death Resulting More Than a Year and a Day After Assault," 40 N.C.L. Rev. 327-329 (1962).
[2] Note, 46 Iowa L. Rev. 883, 888 (1961); Note, 14 Vand. L. Rev. 1532, 1534-1535 (1961); Note, 47 Va. 880, 884 (1961); cf. Cooley, "Constitutional Law," 23 U. Pitt. L. Rev. 263, 264-266 (1961); Schulz, "Criminal Law and Procedure," 27 U. Pitt. L. Rev. 201, 202 (1966).
[3] 19 Chi. Kent L. Rev. 181, 187 (1941); Note, "The Abolition of the Year and a Day Rule: Commonwealth v. Ladd," 65 Dick L. Rev. 166, 171-172 (1961); "Present Status of the Year and a Day Rule," 19 N.Y.U. Intr. L. Rev. 133, 149-150 (1964); Note, 14 Ala. L. Rev. 447, 449-450 (1962); Note, 3 Ariz. L. Rev. 294, 296 (1961); Note, 24 Ga. B.J. 280, 286 (1961); Note, 40 N.C.L. Rev. 327, 333 (1962); Note, 15 Tul. L. Rev. 306, 308 (1941).
[4] In State v. Brown, 22 N.J. 405 (1956), defendant was indicted for murder occurring more than five years prior thereto. His conviction of second degree murder, rather than first, did not affect the applicability of the period of limitations to the crime, and his conviction was affirmed.