157 N.J. Super. 452 (1978)
384 A.2d 1169
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL DeSANTO, DEFENDANT.
Superior Court of New Jersey, Union County Court, Law Division (Criminal).
March 17, 1978.
*454 Mr. John H. Stamler, Prosecutor, for the State (Ms. Susan M. Scarola, Assistant Prosecutor appearing).
Mr. S. David Levy, Assistant Public Defender, for defendant (Mr. Nicholas DiChiara, appearing).
BARBIERI, J.C.C.
This is an application for post-conviction relief brought by Michael DeSanto pursuant to R. 3:22-1. Briefs were submitted and oral argument held. The essential facts are as follows:
In the early morning hours of June 4, 1972 petitioner and one Dominick Caruso cruised the streets of Elizabeth in their automobile. Upon seeing any black person in the *455 street they would drive up, point a rifle out the window and fire. As a result of this wild shooting spree one man was killed, four were wounded and four escaped unharmed.
Caruso was tried before a jury and found guilty on December 6, 1972 of first degree murder as well as numerous counts of assault with intent to kill, assault with an offensive weapon, atrocious assault and battery and related illegal weapons offenses. He was sentenced to life imprisonment on the murder conviction and a consecutive aggregated term of 8 to 12 years on the other offenses.
Petitioner had been indicted for murder (Indictment 661-J-72) but pursuant to a plea agreement he pleaded non vult to that charge on March 13, 1973. As part of the plea agreement voluntarily entered the State would recommend to the sentencing judge a maximum sentence of 30 years on the murder indictment and a recommendation that any sentence imposed on Accusation 84-J-72 (to be discussed below) be made concurrent to the sentence imposed on that indictment. In return petitioner had agreed to testify against his codefendant, Caruso, if needed. In point of fact the State felt it unnecessary to call upon him to testify.
Both sides having complied with their respective promises, petitioner was sentenced pursuant to the plea agreement. On April 13, 1973 defendant was sentenced to 25-30 years in State Prison on the murder indictment. In addition, on Accusation 84-J-72 which charged petitioner in 22 counts with atrocious assault and battery, assault with intent to kill, assault with an offensive weapon as well as related illegal weapons offenses, a concurrent sentence of 25-30 years was imposed.[1]
He is now serving his sentence in State Prison.
In this petition for post-conviction relief petitioner contends that the sentence imposed on Accusation 84-J-72 is *456 illegal because several of the counts merge, with a resulting decrease in the total sentence. It is his position that since the date of the original sentencing newer decisions on merger have asserted new pronouncements on heretofore old concepts regarding merged offenses at sentencing. Compare State v. Best, 70 N.J. 56 (1976), and State v. Jamison, 64 N.J. 363 (1974), with State v. Drayton, 114 N.J. Super. 490 (App. Div. 1971). In essence, petitioner's argument reduces itself to one of retroactivity: May the recent merger cases [Best, Jamison, State v. Francis, 128 N.J. Super. 346 (App. Div. 1974), etc.,[2]] which appeared to signify a change in the law of New Jersey with regard to the merger of offenses at sentencing be applied retroactively to a defendant who brings a petition for post-conviction relief? While this issue can be put to rest only by the Supreme Court, where the question is open there is no reason why this court cannot give the matter plenary consideration. Schwartz v. U.S. Rubber Corp., 112 N.J. Super. 595 (Law Div. 1971), aff'd 118 N.J. Super. 128 (App. Div. 1972). Indeed, it must resolve this issue before the merits of the merger argument can be reached.
To better appreciate the argument which petitioner is putting forth a dissection of Accusation 84-J-72 would be beneficial. This accusation dealt with the eight men who were shot at but not killed in this incident. Of these eight men four were wounded by rifle fire. As to each of these four men petitioner was charged with assault with intent to kill, atrocious assault and battery and assault with an offensive weapon. As to each of the remaining four men, those who escaped unscathed, petitioner was charged with *457 assault with intent to kill and assault with an offensive weapon. In addition, there was also included single counts of illegal possession of a weapon and unlawful use of a dangerous weapon. A separate sentence was imposed on each of the 22 counts of the accusation. The exact breakdown of the sentences is set out in the Appendix. The aggregate sentence of 25-30 years on this accusation was to run concurrent to the 25-30 year sentence imposed on the murder indictment.[3] All this was pursuant to a plea agreement, a meeting of the minds, so to speak, as to the "time" petitioner would ultimately have to serve.
Petitioner's argument concerns the numerous counts in the accusation. It is his contention that many of the assault charges should merge at sentencing, significantly reducing the total number of counts on which he can be sentenced. In support of his position he relies on many of the new merger cases which were decided subsequent to his sentencing on these charges. Thus, the retroactive effect of these cases would appear to be a crucial concern.

I. Is Retroactivity Truly An Issue?

It is petitioner's contention that retroactivity need not concern us. While the State argues that these cases should not be made retroactive based upon the three-prong test which has generally been followed in New Jersey, see State v. Nash, 64 N.J. 464 (1974); State v. Johnson, 43 N.J. 572 (1965), aff'd 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), petitioner argues retroactivity is not an issue at all. As he states in his brief: "Indeed, the Appellate Courts of this State in those decisions were not enunciating new and different law but merely clarifying the original *458 Legislative intent which existed at the time of passage of the charges at issue." The essence of defendant's position is that the recent merger cases did not announce "new" law, i.e., this was not a case where the court abruptly changed direction by overruling a previous case which had been long relied upon by the bar. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Rather, it is argued, the common law of merger has extended itself from case to case in a gradual process of evolution. Thus Best, etc., are not announcing "new" law but merely amplifying the old law and therefore retroactivity (which by definition involves applying "new" law to old cases) is not an issue.
However, petitioner's position is based on certain misconceptions concerning the retroactivity doctrine. "In order for a rule to be `new' so as to give rise to a choice between retroactive and prospective application, it need not be new in the sense that it involves the overruling of prior cases." People v. Hernandez, 11 Cal. App.3d 481, 89 Cal. Rptr. 766, 774 (D. Ct. App. 1970). See, e.g., United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
These cited cases overruled no prior case, yet the rules announced therein were held to have only prospective effect. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Also, the question of whether a rule announced in a given case is "new" is not foreclosed by the fact that the later ruling is a logical outgrowth of a prior holding and its necessary implications. As the Supreme Court recognized in Johnson v. New Jersey, supra, the holding in Miranda was a logical implication in the holding of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Yet Miranda was accorded prospective application.
*459 Thus, simply because Best, etc., did not expressly overrule a prior case and even assuming arguendo that these recent cases were a logical outgrowth of prior merger cases, that in and of itself would not bar a solely prospective application of the newer cases.
Also, for petitioner to make the argument he does forces him to take an inconsistent position vis-a-vis his standing on a proceeding for post-conviction relief. Petitioner has never taken a firm position as to the precise basis of his standing on this post-conviction relief proceeding. See R. 3:22-4. Exception (b) of the rule requiring a showing of "fundamental injustice" would not apply here since there is a lack of the usual egregious circumstances such as might have existed in State v. Reynolds, 43 N.J. 597 (1965), or State v. Clark, 65 N.J. 426 (1974).[4] This court concludes that petitioner's present standing is based on R. 3:22-4(a), i.e., that this merger issue was one which could not reasonably be raised in any prior proceeding. This conclusion is grounded on the fact that defendant seeks the benefit of these most recent merger cases  cases which did not exist at the time of sentencing or during the time allotted to seek appellate review. For petitioner to now argue that these recent merger cases are not "new" cases but simply amplifications of earlier cases is, in effect, to argue that this was an issue which could have reasonably been raised in a prior proceeding. This being true, then standing on a proceeding for post-conviction relief would be barred expressly by R. 3:22-4. Petitioner may not play both sides against the middle. He cannot argue that these cases were anticipated and in the same breath argue that he can maintain this post-conviction relief because the merger issue could not reasonably have been raised before.
*460 Another aspect of petitioner's argument that retroactivity is not an issue must be discussed. The underlying premise of his position is that the law is a finite continuum with end point representing "natural law," i.e., those principles of human conduct which exist independent of enacted law and which might be discovered by the rational intelligence of man. Black's Law Dictionary (4 ed. 1951). This being so, "the judge rather than being the creator of the law was but its discoverer." Linkletter v. Walker, 381 U.S. 618, 623, 85 S.Ct. 1731, 1734, 14 L.Ed.2d 601 (1965). Under this philosophy of the law no distinction is drawn between "new" law and "old" law as such since the duty of the court was not to "pronounce a new law, but to maintain and expound the old one," i.e., "discover" the law. 1 Blackstone, Commentaries 69 (15 ed. 1809), 69, quoted in Linkletter v. Walker, supra at 622, 85 S.Ct. 1731. Thus, where the law was gradually being discovered by judges who took steps forward on that continuum, it only meant that the "old" law which was relied upon until that point by an apparently naive judiciary was never really the law in the first place. Since the "old" law was therefore considered to have never been the law there was no need to concern oneself with the issue of prospective application of "new" law, since that doctrine assumed that all previous decisions did represent the law up until the point that the new law was announced, and should, therefore, remain intact. The idea was illustrated concisely in Linkletter which held Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), to have prospective effect:
In the case of the overruled decision, Wolf v. Colorado, 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782] (1949), here, it was thought to be only a failure at true discovery and was consequently never the law; while the overruling one, Mapp, was not `new law but an application of what is, and theretofore had been, the true law.' [381 U.S. at 623, 85 S.Ct. at 1734; Citations omitted]
*461 Projecting this philosophy of law into the present case, petitioner is essentially arguing that the sentencing judge's original sentence, the result of a voluntary and knowing plea agreement, was illegal because he failed to perceive what the "true" merger law was. In essence he argues that once the later cases (Best, Jamison, etc.) "discovered" the true merger law (or took a giant step along that continuum) it became apparent that the law upon which the judge based his sentence was never the law. Therefore, the sentence is a nullity and a new sentence, based on the law as recently "discovered" must be imposed. Prospective application of the later cases is, therefore, not necessary since the petitioner has a right to be sentenced on the basis of the law as it always was even if it was not discovered until some time later.
Petitioner's argument is based on a philosophy of the law which was originally accepted in the United States. See Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). However, that philosophy is now repudiated. As the court announced in Williams v. United States, 401 U.S. 646, 651, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), "* * * we firmly reject the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored." Today, another view of the law has been generally accepted. Under this view judges do more than simply discover law:
* * * They make it interstitially by filling in with judicial interpretation the vague, indefinite, or generic statutory or common-law terms that alone are but the empty crevices of the law. Implicit in such an approach is the admission when a case is overruled that the earlier decision was wrongly decided. However, rather than being erased by the later overruling decision it is considered as an existing juridicial fact until overruled and intermediate cases finally decided under it are not to be disturbed. [Linkletter v. Walker, supra. at 624, 85 S.Ct. at 1734; emphasis supplied]
Given this premise, a more reasonable argument may be made. As Justice Cardozo noted, the underpinning of this *462 modern view was the realization that judicial repeal "of time worked hardship to those who [had] trusted to its existence." Quoted in Linkletter v. Walker, supra at 624, 85 S.Ct. at 1735. The state of the merger law at the time the judge imposed the original sentence was an operative fact upon which he relied. The actual prior practice of the courts was that these and similar offenses did not merge. Cf. State v. Drayton, supra. The consequences of this prior practice, so evident in the judge's original sentence, cannot be ignored.
Simply because the judge relied on the state of the law in 1973 does not mean that he was misinformed or failed to perceive. It should not mean that the sentence he imposed was a nullity. As Chief Justice Weintraub eloquently stated in State v. Smith, 37 N.J. 481 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1962):
Concepts of justice change. Doctrines, incomprehensible today, were once embraced by judges who in their times were doubtless the epitome of the reasonable man. Surely, this is so in long-range retrospect. It is equally true that at the moment of change the choice is not necessarily between dead right and dead wrong. The judicial scene is studded with issues upon which conflicting views command respectable support. When a court alters its course, it is often but a preference, a belief that justice is better served in another way, with no intimation that whoever disagrees must be mean or inane. [At 484]
Accord State v. Murphy, 85 N.J. 391, 403 (App. Div. 1964).
Petitioner's argument must fail in light of the realities of judicial practice. It is not a question of "natural law" but rather a question of whether a trial judge can rely on the state of the law at any given point in time. "The past cannot always be erased by a new judicial declaration." Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940), quoted in Linkletter v. Walker, supra at 625, 85 S.Ct. 1731. We should not challenge the integrity of our sentencing process or weaken the confidence of those who trusted in the validity of a given rule of law. We should not undermine the principle *463 of finality of prior determinations unless absolutely necessary. Thus, retroactivity is indeed an issue in this case which must be resolved: Should the assumptions concerning merger which were inherent in the sentence imposed by the trial judge be cast aside in light of the most recent pronouncements in this area? This is the question the court turns to now.

II. Retroactivity or Prospectivity?
A court has a general inherent power to decide whether a decision is to be retrospective or prospective. Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); State v. Murphy, supra. As noted before, the acceptance of this general principle is recognition of the fact that previous judge made law is not a nullity and in certain cases should be given effect despite the fact that the law has subsequently shifted direction. Previous law is given continuing effect by holding the new law prospective only, i.e., applying to cases arising after the decision announcing a new rule of law.
In State v. Nash, supra, our Supreme Court dealt with retroactivity in detail. Whether new law in the area of criminal procedure should be given retroactive effect is essentially a function of three considerations:
(1) the purpose to be served by the new standards;
(2) the extent of the reliance by law enforcement authorities on the old standards, and,
(3) the effect on the administration of justice of the retroactive application of the new standards. State v. Nash, supra; Johnson v. New Jersey, supra; Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973).
The three criteria are equally applicable to constitutionally and nonconstitutionally-based decisions. United States v. Crownfield, 439 F.2d 839 (3 Cir.1971); cf. State v. Koonce, 89 N.J. Super. 169 (App. Div. 1965); State v. Saulnier, *464 63 N.J. 199 (1973). It is necessary to examine merger in light of these guidelines.
The purpose of the rule of merger is to avoid double punishment for the same offense. State v. Best, supra. So long as the Supreme Court refuses to establish a constitutional basis for the merger doctrine we must assume that it is based on the underlying equitable policies of fairness and fulfillment of reasonable expectations. Compare State v. Gregory, 66 N.J. 510 (1975). Can these policies be effectuated only by making the new standards retroactive? Cases which have been given retroactive effect have generally been designed "to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." Williams v. United States, supra 401 U.S. at 653 and n. 6, 91 S.Ct. at 1152. See, e.g., Gideon v. Wainright, supra; Roberts v. Russel, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).
Where the reliability of the truth-determining process is seriously impuged there is good reason for applying the new rule to a case already decided. However, where the conviction was obtained as a result of a procedure not considered fundamentally unfair at that time there is no compelling reason for disturbing a prior decision, particularly a prior decision that is no longer subject to direct appeal but is brought in a collateral proceeding for post-conviction relief. State v. Johnson, supra; State v. Blanchard, 98 N.J. Super. 22 (Law Div. 1967).
Merger is essentially a sentencing question. It is not involved in the truth-finding process. The new merger cases are not designed to minimize or avoid the arbitrary or unreliable practice in the trial process. The guilt or innocence of the defendant is not at issue. Merger seeks to serve other ends previously mentioned. State v. Best, supra. To the extent that retroactivity is designed in large measure to preserve the integrity of the truth-determining process, it would appear *465 that the new merger case should not be given retroactive effect. The purpose and policy of Best, etc., can be effectuated by simply holding that those cases apply only in the future.
However, simply concluding that the purpose of these merger standards will not be enhanced by a retroactive application of the recent merger cases does not end the discussion. While that is the most important criterion, the courts may also inquire into the reliance and burden of administration factors if necesssary. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The reliance which the New Jersey judiciary had placed in the pre-Best merger standards is aptly demonstrated in this case where the trial judge sentenced the petitioner on the basis of the law as it then stood. The transcript of the sentencing makes no mention of the possibility that certain of the offenses charged in the accusation might merge. Neither the court nor counsel appears to have regarded merger as a real issue or else it must be assumed the question would have been raised. It is apparent that the judge was properly applying the merger law at that time by not merging these offenses. Cf. State v. Drayton, supra. Such reliance strongly supports a prospective application of the new merger cases if the expectations of trial judges who structure their sentences (time exposure, etc.) around the merger law are to be fulfilled. Indeed, the integrity of the sentencing process may be called into question if cases such as this are always given retroactive effect.
An additional consideration is the expectation the State has that all plea agreements will be carried out in letter and in spirit by both parties. The State and petitioner had a meeting of the minds as to how much "time" would have to be served, 25-30 years. Defendant-petitioner wants this court to give him the benefit of his bargain plus the additional benefit of a later change in the law. The result would be a reduced sentence which the State never contemplated during the plea negotiations. The State should not have to do battle with one hand tied behind its back.
*466 The burden on the administration of justice is the final factor to consider. To allow retroactive application of these cases could open a Pandora's Box of post-conviction relief applications from prisoners. To properly apply these cases it would require judges to enter into factual determinations of whether the charges constituted one "criminal episode." Cf. State v. Nash and Michigan v. Payne, supra. It is difficult to precisely measure the burden that this would place on trial judges already overly worked. Suffice it to say that the potential burden is enough to militate against a retroactive application of these cases.
On the basis of the foregoing this court concludes that the most recent merger cases be held not to apply retroactively to cases which had become final prior to the decisions in those cases. Specifically, this means that this court will not apply those cases retroactively on a petition for post-conviction relief.
The court is not unmindful of the fact that certain parts of the Appellate Division have given limited retroactive effect to these cases sub silento, applying them to cases stilll pending on appeal at the time of those decisions. See, e.g., State v. Whipple, 156 N.J. Super. 46 (App. Div. 1978). Nor is this court unmindful that recent opinions of the United States Supreme Court appear to indicate that there is no need to distinguish between direct appeal and habeas corpus petitions so far as retroactivity analysis is concerned. See Williams v. United States, supra.
This latter view has been challenged as failing to properly take into account the detrimental effect that such a practice will have on the principle of finality of judgments. Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting); Desist v. United States, supra (Harlan, J., dissenting); State v. Blanchard, supra. In Blanchard Judge Larner addressed this problem. It was his belief that unless retroactivity was necessary to correct an abusive practice in the guilt-determining *467 process, collateral attacks of final judgments should be discouraged. He quoted Chief Justice Traynor:
To begin with, their cases are history, and they should not now be given the power to rewrite it. To place at the disposition of the guilty an extraordinary remedy designed to insure the protection of the innocent would be to invite needless disruption in the administration of justice. [98 N.J. Super. at 31, quoting from Traynor, "Mapp v. Ohio at Large in the Fifty States," 1962 Duke J.L. 319, 340, 341 (1962)]
This court believes that the views of Justice Harlan and Chief Justice Traynor are particularly appropriate in this case where the sentencing process rather than the truth-determining process is at issue. Nor is this court convinced that an opinion of the Appellate Division applying Best sub silento to a case pending on appeal is an authoritative opinion that Best and the other recent cases should also apply retroactively on a petition for post-conviction relief. The path of the law should be lineal, not circuitous. Petitioner was sentenced pursuant to his plea agreement. The finality of prior judgments will be respected by holding that the merger cases decided after petitioner's judgment of conviction have prospective effect only.
The petition for post-conviction relief is, therefore, denied.

APPENDIX

 STATE OF NEW JERSEY v. MICHAEL DeSANTO
 ACCUSATION NO. 84 J-72
 VICTIM COUNT NO. CRIME SENTENCE
 Bernard Alston 2 Assault w/ intent to kill 10-12
 " 3 Assault w/ offensive weapon 5- 7
 " 20 Atrocious assault and battery 5- 6
 --------------------------------------------------------
 Jimmy Lawrence 4 Assault w/ intent to kill 10-12
 " 5 Assault w/ offensive weapon 5- 7
 " 21 Atrocious assault and battery 5- 6
 --------------------------------------------------------
 Jerry Graves 6 Assault w/ intent to kill 10-12
 " 7 Assault w/ offensive weapon 5- 7
 " 22 Atrocious assault and battery 5- 6
 --------------------------------------------------------

*468
 Frank Daniels 8 Assault w/ intent to kill 10-12
 " 9 Assault w/ offensive weapon 5- 7
 " 1 Atrocious assault and battery 5- 7
 --------------------------------------------------------
 Willie Jones 10 Assault w/ intent to kill 10-12
 " 11 Assault w/ offensive weapon 5- 7
 --------------------------------------------------------
 Milton Pettaway 12 Assault w/ intent to kill 10-12
 " 13 Assault w/ offensive weapon 5- 7
 --------------------------------------------------------
 Richard Draughn 14 Assault w/ intent to kill 10-12
 " 15 Assault w/ offensive weapon 5- 7
 --------------------------------------------------------
 George Williams 16 Assault w/ intent to kill 10-12
 " 17 Assault w/ offensive weapon 5- 7
 --------------------------------------------------------
 - 18 Possession of Weapon 5- 6
 --------------------------------------------------------
 - 19 Unlawful use of dangerous weapon 5- 6
 --------------------------------------------------------
 Counts 1-17 (assault with intent to kill, assault with offensive
 weapon and one atrocious assault and battery
 (Count 1) shall run concurrent (10-12).
 Counts 18-22 (possession of weapon, unlawful use, three atrocious
 assaults and battery) shall be consecutive to each
 other (25-30) but concurrent to Counts 1-17.
 All sentences imposed on Counts 1-22 of Accusation No. 84-J-72
 are to run concurrently with sentence imposed on Indictment No.
 661-J-72 (murder, second degree) (25-30).

NOTES
[1] The exact breakdown on the various counts in the accusation and the sentence imposed on each count are included in the table which is appended to this opinion.
[2] In addition to the above cited cases other recent merger cases which petitioner relies upon in support of his position are: State v. Natale, 138 N.J. Super. 241 (App. Div. 1975); State v. Moran, 73 N.J. 79 (1977); State v. Richardson & Johnson, 73 N.J. 82 (1977); State v. Young, 148 N.J. Super. 405 (App. Div. 1977). All these cases were decided after petitioner was sentenced.
[3] The fact that the sentence on the accusation was concurrent to the sentence for murder means that in a practical sense petitioner would not serve less time even if he were to prevail on this post-conviction relief proceeding except to the extent it may ultimately affect his parole eligibility.
[4] As a practical matter, petitioner's "time" would not be reduced even if he were successful on this application since the sentences he challenges are still to be served concurrent to the 25-30 year term on the murder indictment.